## HOME OF THE FRIENDLESS *v.* ROUSE.

1. A statute which, for the declared purpose "of encouraging the establishment of a charitable institution," and enabling the parties engaged in thus establishing it "more fully and effectually to accomplish their laudable purpose," gave to the institution a charter, and declared by it

---

\* Corning *v.* Burden, 15 Howard, 252.

† Laber *v.* Cooper, 7 Wallace, 569.          ‡ Ib.

that " the property of said corporation shall be exempt from taxation," and that an already existing statutory provision, that every charter of incorporation should be subject to alteration, suspension, or repeal, at the discretion of the legislature, should not apply to *it*, becomes, after the corporation has been organized, a contract; and its property is not subject to taxation, so long as the corporation owns it and applies it to the purposes for which the charter was granted.

2. A State which, after granting such a charter, passes a law, taxing property of the corporation, passes a law violating the obligation of a contract, and, consequently, such its law, is void, under the Constitution.

ERROR to the Supreme Court of Missouri.

On the 3d of February, 1853, the legislature of Missouri passed " an act to incorporate the Home of the Friendless, in the city of St. Louis." The preamble and one section of the act were thus:

" WHEREAS, it is proposed to establish in the city of St. Louis a charitable institution, to be called ' The Home of the Friendless,' having for its object, to afford relief to destitute and suffering females, and the affairs of which shall be in the keeping of ladies, who contribute pecuniary aid to the institution; therefore, *for the purpose of encouraging said undertaking, and enabling the parties engaged therein more fully and effectually to accomplish their laudable purpose,*

" *Be it enacted, &c., as follows:*

" SECTION 1. All such persons, of the female sex, as heretofore have or hereafter may become contributors of pecuniary aid, as hereinafter specified, to said institution, shall be, and they are hereby, constituted a body politic and corporate, by the name of ' The Home of the Friendless,' and by that name shall have perpetual succession, and be capable in law as well to take, receive, and hold, as to dispose of, as they see proper, all and all manner of lands, tenements, rents, annuities, franchises, and other hereditaments and personal property which may be conducive to the objects of said institution; and all property of said corporation *shall be exempt from taxation;* and the sixth, seventh, and eighth sections of the first article of the act concerning corporations, approved March 19th, 1845, *shall not apply to this corporation.*"

The sections thus referred to provided, that the charter

of every incorporation that should thereafter be granted by the legislature should be subject to alteration, suspension, and repeal, at the discretion of the legislature.

The corporation was organized and set in action, and by gifts, grants, and devises, had acquired a considerable amount of real estate in St. Louis. A constitution, adopted by the State, in the year 1865, authorized the legislature to impose certain taxes, and soon after, the legislature did impose a tax upon the real property of the Home. The corporation declining to pay, the collector of taxes for the county was about to levy on and sell its real estate, when the corporation filed a bill in one of the State courts, praying for an injunction against collecting the taxes, on the ground that they were illegally assessed, all property of the Home being, by its act of incorporation, expressly exempted from taxation at all times. The defendant interposed a demurrer, which was overruled, and the judgment on the demurrer made final. The cause was removed to the Supreme Court of the State, and resulted in the reversal of the judgment of the lower court, and the dismissal of the bill or petition.

The case was now here for review; the Supreme Court of Missouri certifying, as a part of the record, that in the determination of the suit there was necessarily drawn in question the construction of that clause of the Constitution of the United States, which prohibits a State from passing a law impairing the obligation of a contract, and that the decision was against the right claimed by the complainant, and was necessary to the adjudication of the cause; thus bringing the case clearly within the 25th section of the Judiciary Act, which gives to this court in such cases a power to examine and affirm or reverse the decision of the State court.

The question was, whether the act of 1853 was a contract never to tax. If so, the subsequent act was in violation of that clause of the Constitution which says, that "no State shall pass any law impairing the obligation of contracts."

*Mr. B. R. Curtis, for the appellant:*

1. The charter contains not only an explicit promise on

the part of the State, that whatever property should be owned by this charity should not be taxed, but, what is very unusual, if not unprecedented, it contains an assurance that the legislative power should not thereafter be used to interfere with this franchise.

The discretionary authority which the legislature reserved, in regard to corporations in general, it is declared, shall not exist as to *this* corporation.

The charter in express terms, holds out to the benevolent persons to whom it is addressed, that, if they will take upon themselves the burden of organizing this corporation, of making themselves, and soliciting from others, donations and grants, and of administering its affairs for the relief of suffering female poor of the city of St. Louis, the funds thus obtained, devoted, and held, shall not be diminished by taxation.

2. That the legislature had power to make this contract, and that when made and accepted it became one of the franchises of this corporation, of which it could not be deprived, is too well settled to require a citation of numerous authorities.*

*Messrs. Dick and Blair, contra:*

1. The legislature, in 1853, for the mere consideration that the Home should be established, with no obligations or duties imposed upon it, had no power to promise that the State of Missouri should never have the legal authority to impose a tax upon any property which it might acquire, and, at the same time, confer upon it power to acquire an unlimited amount of property. The State may accept a bonus in place of a tax, or may fix upon a given rate of taxation, and thus, for a consideration, bargain away the power to levy taxes in the usual way. But this charter makes no such contract.†

---

* See the cases collected in Cooley's Constitutional Limitations, 279-81.

† Rector of Christ Church v. County of Philadelphia, 24 Howard, 300; East Hartford v. Hartford Bridge Co. 10 Id. 511, 535; Commonwealth v.

2. The legislature has not in the act of 1853, declared its intention to bind the State never to impose any such tax. The language used does not expressly say that the State *forever* is to be bound, and the law will not imply such meaning.*

3. The rule of construction applicable to laws relied upon as contracts, granting to corporations special advantages, to the detriment of the public, is that they shall be construed strictly against the corporation.

4. There is no consideration stated in the law for the release from taxation. The establishment of the institution by the corporation, was the consideration which made the grant of the charter binding upon the State, and the contract to that extent is beyond the control of the State as a contracting party. But the exemption from taxation was a mere gratuity, intended to last during the pleasure of the State.†

The legislature of 1853 omitted to provide for any advantage in the future to the State, which should be commensurate with the greater and growing advantage to the institution, which would accrue from the increase of taxes appropriated to its use with the increase of its property. The law shields the Home from rendering any account of the amount of public funds thus devoted to its use, and authorizes an unlimited increase.

This omission of the legislature, as the agent of the State, to provide for any commensurate advantage to the State, or for any check upon the corporation, is fatal to the instrument as a contract. For, first, it will not be held that the legislature could have intended any such arrangement to have been perpetual and obligatory as a contract on the people; and, second, if such was its intention, it had no

---

Bird, 12 Mass. 443, cited in 24 Howard, 300, 303 ; Providence Bank *v.* Billings, 4 Peters, 561.

* Charles River Bridge *v.* Warren Bridge, 11 Peters, 536, 583; Butler *v.* Penn., 10 Howard, 402.

† Phalen *v.* Virginia, 8 Howard, 163; Bank of Columbia *v.* Okely, 4 Wheaton, 235; Aspinwall *v.* Commissioners, 22 Howard, 364.

such legal power as an agent.   The cases already cited, with others, show this.*

5. Retrospective laws divesting rights not secured by con-. tract may be passed by a State†

*Reply.*—To suppose that any consideration beyond the public objects for which this corporation was created was necessary as a basis of a contract is a mistake.   The consideration is found in the nature of those objects, the acceptance of the charter, and the consequent implied undertaking to use its franchises in the way and for the purposes in which they were granted.

This has been the settled law of this court since the *Dartmouth College case,*‡ and is fully set forth anew of late, in the *Binghamton Bridge case,*§ as the continuing and unalterable judgment of the court.

Mr. Justice DAVIS delivered the opinion of the court.

The case is relieved, by the certificate of the Supreme Court of Missouri, of all difficulty on the question of the jurisdiction of this court, and the important question raised by the record is, whether the State of Missouri contracted with the plaintiff in error not to tax its property.   If it did so contract, it is undisputed that the assumed legislation, under the authority of which the property in controversy was taxed, impaired the obligation of this contract.

The object for which the Home of the Friendless was incorporated was to enable those persons of the female sex, who were desirous of establishing a charitable institution in St. Louis for the relief of destitute and suffering females, to carry out their laudable undertaking.

It can readily be seen that a charity of this kind would

* State Bank of Ohio *v.* Knoop, 16 Howard, 378 ;  Commonwealth *v.* Bird, 12 Massachusetts, 443 ;  Brewster *v.* Hough, 10 New Hampshire, 139 ;  People *v.* Roper, 35 New York, 629 ;  Mott *v.* Pennsylvania Railroad Co., 6 Casey, 9 ; Commonwealth *v.* Easton, 10 Barr, 442 ;  Gardner *v.* State, 1 Zabriskie, 557.
† Satterlee *v.* Matthewson, 2 Peters, 413 ;  Watson *v.* Mercer, 8 Id. 110 ; Railroad *v.* Nesbit, 10 Howard, 401.
‡ 4 Wheaton, 625.                                    § 3 Wallace, 73.

be of great benefit to the people of St. Louis, and that the legislature of the State would naturally be desirous of using all proper means to promote it. The purposes to be attained by such a charity are usually beyond the ability of individual effort, and require an association of persons who will themselves contribute pecuniary aid, and are willing to become solicitors for the contributions of others. Usually the initiation of such an enterprise is in the hands of a few persons who need to be clothed with more than ordinary powers in order to obtain the successful co-operation of others. In no way could this co-operation be better secured than by conferring on the corporators the authority to say to the benevolent people of St. Louis, that their donations in money or lands, for the relief of the suffering female poor of the city, would be held by the institution undiminished by taxation.

It was doubtless under the influence of these considerations, and because every government wishes to encourage benevolent enterprises, that the legislature granted the charter for the Home of the Friendless, and said to the charitable persons engaged in this business, that if they would organize the society and conduct its affairs, would give themselves and solicit others to give for the common purpose, " that the property of the corporation shall be exempt from taxation." This charter is a contract between the State of Missouri and the corporators that the property given for the charitable uses specified in it, shall, so long as it is applied to these uses, be exempted from taxation. It follows, that any attempt to tax it impairs the obligation of the contract. It is proper to observe, that the immunity from taxation does not attach to the property after the corporation has parted with it, but is operative on it while owned by the corporation, and devoted to the uses for which it was originally given.

It is objected that there is no consideration stated in the act for the release from taxation, which it is claimed is necessary in order to uphold the contract. But this is a mistaken view of the law on this subject.

There is no necessity of looking for the consideration for a legislative contract outside of the objects for which the corporation was created. These objects were deemed by the legislature to be beneficial to the community, and this benefit constitutes the consideration for the contract, and no other is required to support it. This has been the well-settled doctrine of this court on this subject since the case of *Dartmouth College* v. *Woodward.*

It is contended that the rules of construction applicable to legislative contracts are more stringent than those which are applied to contracts between natural persons, and that, applying these rules to this contract, it cannot be sustained as a perpetual exemption from taxation.

It is true that legislative contracts are to be construed most favorably to the State if, on a fair consideration to be given the charter, any reasonable doubts arise as to their proper interpretation; but, as every contract is to be construed to accomplish the intention of the parties to it, if there is no ambiguity about it, and this intention clearly appears on reading the instrument, it is as much the duty of the court to uphold and sustain it, as if it were a contract between private persons. Testing the contract in question by these rules, there does not seem to be any rational doubt about its true meaning. "All property of said corporation shall be exempt from taxation," are the words used in the act of incorporation, and there is no need of supplying any words to ascertain the legislative intention. To add the word "forever" after the word "taxation" could not make the meaning any clearer. It was undoubtedly the purpose of the legislature to grant to the corporation a valuable franchise, and it is easy to see that the franchise would be comparatively of little value if the legislature, without taking direct action on the subject, could at its will, resume the power of taxation. This view is fortified by the provisions of the general law of the State regarding corporations, in force at the time this charter was granted, and which the legislature declared should not apply to this corporation. The seventh section of the act concerning corporations, ap-

proved March 19, 1845, provided that " the charter of every corporation that shall hereafter be granted by the legislature shall be subject to alteration, suspension, and repeal, in the discretion of the legislature." As the charter in controversy was granted in 1853, it would have been subject to this general law if the legislature had not, in express terms, withdrawn from it this discretionary authority. Why the necessity of doing this if the exemption from taxation was only understood to continue at the pleasure of the legislature?

. The validity of this contract is questioned at the bar on the ground that the legislature had no authority to grant away the power of taxation. The answer to this position is, that the question is no longer open for argument here, for it is settled by the repeated adjudications of this court, that a State may by contract based on a consideration, exempt the property of an individual or corporation from taxation, either for a specified period, or permanently. And it is equally well settled that the exemption is presumed to be on sufficient consideration, and binds the State if the charter containing it is accepted.*

It is proper to say that the present constitution of Missouri prohibits the legislature from entering into a contract which exempts the property of an individual or corporation from taxation, but when the charter in question was passed there was no constitutional restraint on the action of the legislature in this regard.

Without pursuing the subject further, we are of the opinion that the State of Missouri did make a contract on sufficient consideration with the Home of the Friendless, to exempt the property of the corporation from taxation, and that the attempt made on behalf of the State through its authorized agent, notwithstanding this agreement, to

---

* New Jersey v. Wilson, 7 Cranch, 164; Gordon v. Appeal Tax Court, 3 Howard, 133; Piqua Bank v. Knoop, 16 Id. 369; Ohio Life and Trust Co. v. Debolt, 16 Id. 416; Dodge v. Woolsey, 18 Id. 331; Mechanics' and Traders' Bank v. Thomas, Ib. 384; Mechanics' and Traders' Bank v. Debolt, Ib. 380; McGee v. Mathis, 4 Wallace, 143.

compel it to pay taxes, is an indirect mode of impairing the obligation of the contract, and cannot be allowed.

JUDGMENT REVERSED, and the cause remanded to the court below, with directions to proceed ·

IN CONFORMITY WITH THIS OPINION.

The CHIEF JUSTICE, with MILLER and FIELD, JJ., dissented; see the opinion of MILLER, J., *infra,* p. 441, in the next case.

