THE PEOPLE ex rel. THE NEW YORK ELEVATED RAILROAD COMPANY, Appellant, *v.* THE COMMISSIONERS OF TAXES AND ASSESSMENTS FOR THE CITY AND COUNTY OF NEW YORK, Respondents.

The foundations, columns and superstructure of an elevated railway are included in the words " lands " and " real estate " as defined in the statute in reference to taxation (1 R. S. 387, §§ 1, 2), and so are taxable as real estate.

The person or corporation owning these fixtures may be assessed therefor, although the fee of the land to which they are affixed is in another; and

this without regard to the question whether that other is a natural person, or a municipality, or whether the land is or is not liable to taxation. The provisions of the statutes in reference to the W. S. & Y. P. R. Co., to whose rights the relator succeeded, requiring that company to pay five per cent. of its net income from passenger traffic upon Manhattan Island, into the treasury of the city of New York, as a compensation to the city for the use of its streets (§ 9, chap. 489, Laws of 1867; §§ 2, 3, 4, chap. 855, Laws of 1868), do not exempt any part of the property of the relator from taxation.

*R. R. R. Co.* v. *The Mayor* (14 Ga. 275), *Home of the Friendless* v. *Rouse* (8 Wall. 430), *Tomlinson* v. *Branch* (15 id. 460), *Humphrey* v. *Pegues* (16 id. 244), *P. R. R. Co.* v. *Maguire* (20 id. 36), *B. & P. R. R. Co.* v. *Harris* (21 Me. 533), *Mayor, etc.* v. *B. & C. R. R. Co.* (6 Gill, 288), distinguished.

( Argued October 8, 1880; decided November 9, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment of Special Term, which affirmed the proceedings of defendants in assessing the foundations, columns and superstruction of the relator's road in the city of New York, as real estate, which proceedings were brought up for review by certiorari. (Reported below, 19 Hun, 460.)

*David Dudley Field* for appellants. The relator's structure being upon property that belongs to the city which is exempt from taxation, is not taxable. (*People* v. *Doe*, 36 Cal. 220; *U. S.* v. *R. R. Co.*, 17 Wall. 322; Laws of 1813, chap. 863, § 178; *People* v. *The Brooklyn Assessors*, 39 N. Y. 81; *Smith* v. *The Mayor*, 68 id. 552; *People ex rel. Van Nest* v. *The Commissioners of Taxes*, Ct. of App., not reported; *People* v. *Cassidy*, 46 N. Y. 46.) The contract between the company and the city, sanctioned by the State, exempts the company from the payment of the tax. (Laws of 1868, chap. 855, § 3; *Bangor R. R.* v. *Harris*, 21 Me. 533; *Rome R. R.* v. *Mayor*, 14 Ga. 275; *Worcester* v. *Western R. R.*, 4 Metc. [45 Mass.] 564; *Mayor* v. *Baltimore R. R.*, 6 Gill, 288; *Gordon* v. *Appeal Tax Commissioners*, 3 How. [U. S.] 133; *Home* v. *Rouse*, 8 Wall. 430; *Tomlinson* v. *Branch*, 15 id. 460; *Humphrey* v. *Pegues*, 16 id. 244; *Pac. R. R.* v. *McGuire*, 20 id. 36.)

*Samuel Hand* for respondents. The respondents properly assessed the foundations and superstructure of the relator as real estate. (*Walker* v. *Sherman*, 20 Wend. 655; *Laflin* v. *Griffiths*, 35 Barb. 68; *Potter* v. *Cromwell*, 40 N. Y. 287; *Tabor* v. *Robinson*, 36 Barb. 483; *Main* v. *Schwartzwalder*, 4 E. D. Smith, 273; *Goodrich* v. *Jones*, 2 Hill, 142; *Bishop* v. *Bishop*, 11 N. Y. 123; *Snedeker* v. *Warring*, 12 id. 170; *The Railroad Co.* v. *Cassity*, 46 id. 46; *The People* v. *Beardsley*, 52 Barb. 105; *Smith* v. *The Mayor*, 68 N. Y. 555; *The People ex rel. Smith* v. *The Com. of Taxes*, 10 Hun, 209; *Hudson River Bridge Co.* v. *Patterson*, 74 N. Y. 365; 68 id. 552; *Williams* v. *N. Y. C. R. R. Co.*, 16 id. 97–109; *Craig* v. *R. & B. R. R. Co.*, 39 id. 404; Washburn on Easements, 6, title 1, chap. 13 of part 1; *People ex rel. The Citizens' Gas Light Co. of Brooklyn* v. *The Assessors*, 39 N. Y. 81.) There is nothing in the statutes under which the relator's railroad was erected which can be construed to vary this rule. (Chap. 697, Laws of 1866; chap. 489, Laws of 1867; chap. 885, Laws of 1868; chaps. 595, 606, Laws of 1875.) The payment of the five per cent on its net profits was not intended to be in lieu of the payments of taxes by the West Side and Yonkers Railroad Company, or its successors, upon its real estate and capital stock. (Cooley on Taxation, 146; Hilliard on Taxation, 72; *The Delaware Railroad Tax*, 18 Wall. 224.)

DANFORTH, J. The tax commissioners of the city of New York treated the foundations, columns and superstructure of the relator's road as real estate, and imposed a tax thereon. Whether they were justified by law in so doing is the only question now before us; and to show that they were not, the learned counsel for the appellant has put the case two ways: *First*, That the property is not assessable as land, although in this contention as we understand the argument it is not denied that in a general legal sense, and aside from the immediate purpose of taxation, it would properly be regarded as real estate. *Second*, That by force of a statute, to the benefit of whose pro-

visions the relator has succeeded, it is exempt from the payment of the tax imposed.

The statute (1 R. S., chap. 13, tit. 4, p. 387), under which the proceedings complained of were had, provides, (§ 1), " That all lands and all personal estate within this State, whether owned by individuals or by corporations, shall be liable to taxation, subject to " certain " exemptions " not affecting the question before us, and by section 2, the term " land " as used in this chapter is to " be construed to include the land itself, all buildings and other articles erected upon or affixed to the same, all trees and underwood growing thereon, and all mines, minerals, and quarries and fossils in and under the same, except mines belonging to the State ; and the terms " real estate " and " real property " wherever they occur in this chapter are to be construed as having the same meaning as the term " land " thus defined."

Whether the property assessed, the foundations and superstructure, come within any of the descriptions above enumerated, is a question of law upon the construction of the statute itself ; and this has been so often given in cases quite analogous, as to render unnecessary any addition to the reasoning on which they rest. That they would be fixtures at common law, as articles annexed to the freehold, is plain both upon principle and authority ( *Walker* v. *Sherman*, 20 Wend. 655, *McRea* v. *Central National Bank of Troy*, 66 N. Y. 489), and that under the definition given by the statute, they are subject to taxation, is also too well settled to be now successfully disputed.

In *The People ex rel. The Dunkirk & Fredonia R. R. Co.* v. *Cassidy et al., Assessors of the town of Dunkirk* (46 N. Y. 46), it appeared that the relator's railroad was laid upon the streets of the town of Dunkirk. The defendants styled its track real estate, and assessed it as such. In *Smith* v. *The Mayor, etc., of the city of New York* (68 N. Y. 552), the plaintiff's pier was constructed upon land in the harbor of New York, belonging to the city. The pier was assessed by the defendants. In both cases the assessment was upheld, because in the opinion of the court the statute includes, for the

purpose of taxation, any "interest in real estate which will protect the erection or affixing thereon, and the possession of buildings and fixtures" brings them within the term "land," and "holds them to assessment as the land of whomsoever has that interest in the real estate, and owns and possesses the buildings and fixtures." The same doctrine is asserted in *The Hudson River Bridge Co.* v. *Patterson* (74 N. Y. 365), and in that case, and also in the later one of *People ex rel. Van Nest* v. *Commissioners of Taxes*, April 6, 1880, not yet reported,* both the cases above cited were referred to, and made the basis of judgment. It has thus been declared by repeated decisions, first, that fixtures of a character not unlike those of the relator's are within the above cited statutory definition of land, and so liable to taxation; and second, that the person or corporation owning the fixtures may be assessed therefor, although the fee of the land to which they are affixed is in another; and third, whether that other is a natural person, or town, or the city of New York, or liable to taxation, can make no difference, and these conclusions furnish the answer to the first position, upon which this appeal is pressed.

The remaining proposition of the learned counsel for the appellant is based upon certain provisions of law which, it is claimed, relieve the relator from this liability. It was organized under the general railroad act (Laws of 1850, chap. 140), and its amendments, and so, also, was the West Side & Yonkers Patent Railway Company. The relator succeeded to the rights of this company (Laws of 1875, chap. 595), and under the act of 1867 (vol. 1, chap. 489, § 9), was required to pay a sum of five per cent of its net income from passenger traffic upon Manhattan Island into the treasury of the city of New York, in such manner as the legislature should thereafter direct, as a compensation to the corporation of the city of New York for the use of the streets over which it extended, and which it used as provided in the statute. By section 2, Laws of 1868, chap. 855, in pursuance of section 9 of the act of 1867, before referred to, the legislature directed that this five per cent should

---

* 80 N. Y. 573.

be paid in January of each year, and quarter-annually thereafter, to the comptroller of the city of New York, "for the purpose of being expended in the improvements of the condition or the appearance of the streets or places through which the railway should be constructed, by preserving or transplanting shade trees, or by other embellishments or improvements of awnings and sidewalk structures, which may tend to render the general condition and appearance of the streets aforesaid satisfactory to the citizens dwelling in, or frequenting the same." And section 3 of the same act provides that this payment "shall be the legal compensation in full for the use and occupation of the streets by said railway as provided by law, and shall constitute an agreement in the nature of a contract, between said city and constructing company, entitling the latter, or its successors, to the privileges and rates of fare heretofore, or hereinafter legalized," and the mayor, in behalf of the city, was thereby authorized, in case of any default in payment as aforesaid, to sue for and collect at law any arrearages in such payment, and the claims of the city therefor were declared to constitute a lien on the railway of said company, and priority over all others was given to it; by section 4 it is also provided that the compensation named in the preceding section is to cover all claims for removal of structures owned by individuals or companies.

There is not in the provisions referred to, nor in any other part of the statute to which our attention has been called, nor elsewhere so far as we can discover, any express exemption of any part of the property of this corporation from taxation. If such exemption had been intended, it would not have been left to inference, for that cannot be indulged in against the State. Moreover, the statutes from which we have quoted, and it is upon these parts that the relator relies, seem to us very precise and unambiguous. The terms used declare the intention of the legislature, and both are satisfied by a construction which imposes a contract liability for a specific purpose upon the object of the grant. Its provisions cannot go further. The privilege claimed by the relator is an exemption which trenches on the general right of every citizen to have all property con-

tribute to the expenses and cost of government. As it relieves the one claiming it so it would increase the necessary burden of the other. Such a consequence could be given only to clear language. An intention to that end is not discovered. The contribution exacted by the statute is expressly applied to remedy evils and relieve injuries which would have had no existence except for the interference by the relator with the streets and avenues of the city, and it is as the statute itself declares, "compensation for the use and occupancy of the streets." No other effect can be given to it. It in no respect changes the relator's position in reference to taxation, nor does it add another exemption to those specified in the general law controlling it. By that law the relator's property is subjected to taxation for purposes indicated by the State. By the various special statutes above cited, it is permitted to enjoy privileges upon terms which these statutes indicate. A compliance with these terms constitute the consideration upon which the contract embodied in the statute was entered into. Its limits are defined and cannot be so extended as to interfere with the general law of the State or relieve it from a participation in the common burden. Taxation is the rule and exemption is not established by doubtful implication. (*People ex rel. M. F. Ins. Co.* v. *Commissioners of Taxes, etc.,* 76 N. Y. 64.) It is unreasonable to suppose that the legislature would effect a measure of so much importance as the one claimed in this case, without giving a formal and explicit expression of its intention, but we find here no ground on which implication can rest. There is no connection between the two statutes, and we discover in the one relied upon by the appellant (Laws of 1868, chap. 855), no intention on the part of the State to make any deduction or abatement of any taxes, charges, assessments or impositions to which it might, except for this statute, be entitled, and certainly none to relinquish all right thereto or to its effective means of enforcing payment of the sum due to it, in exchange for a dividend to be computed upon that uncertain and fluctuating quantity resulting from corporate management and book-keeping, known as net income.

We have examined the various cases placed upon the appellant's points in support of the proposition we have now considered, but find that they were decided under statutes which in express terms exempted the property in question from taxation (*Rome R. R. Co.* v. *Mayor, etc.,* 14 Ga. 275; *Home of the Friendless v. Rouse,* 8 Wall. 430; *Tomlinson* v. *Branch,* 15 id. 460; *Humphrey* v. *Pegues,* 16 id. 244; *Pacific R. R.* v. *Maguire,* 20 id. 36), or under a charter which converted it into personal estate (*Bangor & P. R. R. Co.* v. *Harris,* 21 Me. 533), or a system of law by which the railroad was regarded as a public easement, the works created by the corporation as public works, and so in like degree and for the same reason, as State houses, forts, arsenals and other structures appropriated to public uses, exempt from taxation.

The reasoning of the court in *The Mayor, etc.* v. *Baltimore, etc., R. R.* (6 Gill, 288) sustains the decision now under review, for, although the property there in question was held, to be exempt from taxation, it was because the statute of the State where the company was incorporated declared that it should be.

It is needless to say that none of these grounds are to be found in the legislation of this State.

The judgment should be affirmed.

All concur.

Judgment affirmed.