THE PEOPLE, ex rel. THE NEW YORK AND HARLEM RAILROAD COMPANY, Respondent, *v.* THE COMMISSIONERS OF TAXES AND ASSESSMENTS OF THE CITY AND COUNTY OF NEW YORK, Appellant.

An order, reversing on *certiorari* the proceedings of the commissioners of taxes and assessments in the city of New York, in the assessment of property, is final and so reviewable here, although by the terms of the order the matter is remanded to the commissioners for farther proceedings, as they have no authority to proceed under the order.

*In re Moore* (67 N. Y. 555), and *In re N. Y. & H. R. R. Co.* (98 id. 12), distinguished.

The "tunnels, tracks, substructures, superstructures, stations, viaducts and masonry" of the N. Y. & H. R. R. Co., situate on and under Fourth avenue in the city of New York are "land" within the meaning of that word as used in the statute in reference to property liable to taxation (1 R. S. 387, § 2), and are assessable as such.

The fact that certain of the structures were built for the purpose of furnishing to the public safe and convenient crossings over the railroad tracks, in compliance with the requirements of the act of 1872 (Chap. 702), and that under said act the city is required to pay a portion of the expense of the construction, does not divest the structures of the incidents attached to the other property belonging to the railroad company, or give the city any title thereto.

As regards taxation it is immaterial whether a railroad is laid upon the surface, placed on pillars, or carried through a covered way or tunnel, the structures adopted to sustain it, or facilitate and protect its use, are, within the meaning of the law, land, and for them the railroad company is liable to be taxed.

*People, ex rel. N. Y. & H. R. R. Co.*, v. *Com'rs of Taxes, etc.* (23 Hun, 687), reversed.

(Argued December 23, 1885 ; decided January 19, 1886.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made February 4, 1881, which reversed an order affirming on *certiorari* the proceedings of the commissioners of taxes and assessments of the city of New York, in assessing as real estate, for the purposes of taxation, certain structures which are described in the opinion. (Reported below, 23 Hun, 687.)

The facts so far as material are set forth in the opinion.

The commissioners of taxes and assessments in the city of New York, assessed as real estate: "The tunnels, tracks sub-

structures, superstructures, stations, viaducts and masonry of the New York and Harlem railroad, which are situated on and under Fourth avenue, between Eighty-sixth street and the Harlem river, in the twelfth ward of the city of New York, in the sum of $1,500,000; and also as real estate, the tunnel, track, substructures, superstructures and masonry of the said New York and Harlem railroad, which are situated on and under Fourth avenue, between Forty-fifth street and Eighty-sixth street, in the nineteenth ward, in the further sum of $1,500,000, and entered the same in the books called the 'Annual Record of Assessed Valuations of Real and Personal Estate,' as follows:

| RAILROADS. | NINETEENTH WARD, 1879. | Ward No | Value of Real Estate. | Corrected Amount. |
|---|---|---|---|---|
| Owner or Occupant. | Description of Property. | | | |
| New York and Harlem Railroad Co... | Tunnel, tracks, superstructure, road-bed and masonry, on and under Fourth avenue, between Forty-fifth and Eighty-sixth street. | 102 | $1,500,000 | ,, |

In due time the relator applied to the commissioners to have the assessed value corrected, but were denied. A review of the proceedings was had upon *certiorari*, issued out of the Supreme Court, when at Special Term they were affirmed and the writ dismissed. On appeal to the General Term, the order of the Special Term was reversed, as was also the proceedings of the commissioners, and they were remanded for further proceedings. From this decision an appeal is taken to this court

*D. J. Dean* for appellant. The structure was properly assessed as real estate. (1 R. S. [5th ed.] 905, §§ 1, 3.) The structure is a fixture, even according to the common-law definition. And as such would, independently of the statute, be taxable as "land," or "real estate." ( *Walker* v. *Sherman*, 20

Wend. 636; *Laflin* v. *Griffiths*, 35 Barb. 58; *Potter* v. *Cromwell*, 40 N. Y. 287; *McRae* v. *Central Bk.*, 66 id. 489; *Tabor* v. *Robinson*, 36 Barb. 483; *Main* v. *Schwartzwalder*, 4 E. D. Smith, 273; *Goodrich* v. *Jones*, 2 Hill, 142; *Bishop* v. *Bishop*, 11 N. Y. 123; *Snedeker* v. *Wareing*, 12 id. 170.) This structure is to be considered as land or real estate, for purposes of taxation, under the provisions of the statute. (*R. R. Co.* v. *Cassidy*, 46 N. Y. 46; *People* v. *Beardsley*, 52 Barb. 105; *Smith* v. *Mayor, etc.*, 68 id. 552; *People, ex rel. Smith,* v. *Commissioners of Taxes*, 10 Hun, 207; *Hudson R. Bridge Co.* v. *Patterson*, 74 N. Y. 365; *People, ex rel. N. Y. Elevated R. R. Co.*, v. *Commissioners*, 82 id. 460.) It is not necessary that the fee of the land, over or beneath which the railroad was constructed, should be in the person or corporation assessed. (*People, ex rel. R. R. Co.*, v. *Cassidy*, 46 N. Y. 46; *Hudson R. Bridge Co.* v. *Patterson*, 74 id. 365; *People, ex rel. N. Y. Elevated R. R. Co.*, v. *Commissioners, etc.*, 82 id. 460; Laws of 1872, chap. 702, §§ 7, 9, 10; 4 Kent's Com. 536; *Jennings* v. *Conboy*, 73 N. Y. 230; *Parker* v. *Plummer*, Cro. Eliz. 190; *Kerry* v. *Derrick*, Cro. Jac. 104; *Stewart* v. *Garnet,* 3 Sim. 398; *Craig* v. *Craig*, 3 Barb. Ch. 76.) It is not necessary that the land through which the tracks and structures are constructed should be subject to taxation. (*People, ex rel. N. Y. Elevated R. R. Co.*, v. *Commissioners of Taxes*, 82 N. Y. 460; *People* v. *Cassidy*, 46 id. 46; *People* v. *Beardsley*, 52 Barb. 105; *Smith* v. *Mayor, etc.*, 68 N. Y. 555; *Hudson R. Bridge Co.* v. *Patterson*, 74 id. 365.) In assessing the value of the relator's real estate, the respondent was not restricted to its cost, nor was. it bound in that regard by the representations made in behalf of the relator. (*People, ex rel. Buffalo & State Line R. R. Co.,* v. *Barker*, 48 N. Y. 71.)

*Henry H. Anderson* for respondent. Neither Fourth avenue, nor the work which was done under the act of 1872, called the Fourth avenue improvement, is liable to be assessed or taxed as property of the city. (*People* v. *Kerr*, 27 N. Y. 188, 197, 198; *Worcester Co.* v. *Worcester*, 116 Mass. 193; *Trustees of*

*Public Schools* v. *Trenton*, 30 N. J. [3 Stew.] 667; Cooley on Tax. 131; *Plumstead Board* v. *British Land Co.*, L. R., 10 Q. B. 203; *People* v. *Salomon*, 51 Ill. 52.) It cannot be assessed or taxed as the property of the railroad company. It is in no sense the property of the company taken as a whole. (1 R. S. 415 [Edm. ed. 375], § 6, subd. 2.) The only right the relators have in these tunnels, viaduct, substructure and masonry is the franchise of running through or over them. But this gave and gives the company ownership neither in the tunnels, nor in any other part of the improvement, and without *ownership*, the liability to assessment for taxation cannot exist. (*Smith* v. *Mayor, etc.*, 68 N. Y. 552; *Hudson R. Bridge Co.* v. *Patterson*, 74 id. 365.) The legislature cannot be supposed to have intended to authorize the assessment of a tax which cannot be collected, or to which legislation for the collection of taxes cannot practically be applied. (Laws of 1843, chap. 321; 1 Laws of 1871, chap. 381, p. 740.)

DANFORTH, J. We think the order appealable. Although by its terms the matter is remanded to the tax commissioners, we are referred to no statute under which they can proceed further. Both parties agree that the proceeding is a special one, and we find no aspect in which the order can be regarded as other than a final one. In this respect it differs from the *Moore Case* (67 N. Y. 555), where a rehearing was ordered before the Special Term, and *Matter of the Harlem Railroad* (98 N. Y. 12), where the appeal was dismissed, because for aught that appeared, the order was made in the exercise of discretionary power conferred by statute, and from the other cases cited by the respondent for one or the other of these reasons.

Upon the merits the appeal is well taken. That the things in question form an essential and necessary part of the relator's railroad, as now constructed within the city of New York, cannot be doubted; that of themselves they constitute land within the definition of that term, given in the statute relating to property liable to taxation (1 R. S., tit. 1, chap. 13, art. 1, § 2), is equally clear (*People, ex rel. Elevated*

*R. R. Co.,* v. *Comrs. of Taxes,* 82 N. Y. 459), and if so, they are liable to assessment to whomsoever has that interest in the real estate which will protect the erection or affixing thereon of these structures, and their possession. (*Smith* v. *Mayor, etc.,* 68 N. Y. 552.) As to the tracks, rails, sleepers, switches and sidings forming the superstructure upon which the relator's cars run, it is necessarily conceded that, under the law as interpreted in this State, they are to be regarded as real estate belonging to the corporation, and assessable as such, but as to the other subjects which have been treated by the commissioners as equally liable, the contention of the learned counsel for the relator is, that they form part of a public work, erected for the accommodation of the public as part of the improvement known as the Fourth avenue improvement, and belong, not to the railroad company, but to the city, and in its support is cited the statute entitled " An act to improve and regulate the use of the Fourth avenue in the city of New York." (Laws of 1872, chap. 702.)

We find in none of its provisions warrant for such exemption, nor any intention on the part of the legislature to release the defendant from any obligation or liability previously existing, or to which it was bound by the general law. A corporation can construct or operate a railroad only for public use ; it cannot exercise its necessarily great powers, except in furtherance of the objects of its incorporation. It may without special permission, and in carrying out its own plans, cross a railroad or highway, not only upon a level, but by means of bridges, viaducts, culverts, under or over passages, and in one way more than another conduct its operations with greater concern for the public safety, but it has never yet been held that the bridge or tunnel by which this safety was promoted did not partake of the incidents of its other property. It may go through a cutting, or upon an embankment, and in either case by walls provide against danger from the slipping of the earth. The whole line might be executed in tunnel, but one as much as the other would be, within the meaning of the law, land, and each equally in possession of the company. Now when we

look at the statute (1872, *supra*) upon which reliance is placed for a different rule, we find authority conferred upon the relator, under certain conditions, to regulate the grade of its railroad in the Fourth avenue, and to construct viaducts, foot and road bridges over any such excavations and tunnels under it, as will make the same safe and convenient to persons crossing, and railroad trains and passengers traveling thereon; at certain streets it prescribes crossings, stone arches and iron bridges, some for foot passengers, others for foot passengers and carriages, and in those places, iron railings or brick walls outside the railroad tracks, to prevent crossing at a level; and where there is an open cut, retaining walls; and when all is done, the same law declares that the " tunnel and railways shall be exclusively for the uses and purposes of said railroad company," and it is made unlawful for any person other than a public officer, in the execution of his duty as such, " to enter or pass upon or through the same, or any portion thereof, on foot or in any other way than in the proper cars of this corporation provided for that purpose." The premises, therefore, upon which these various structures are placed are in the exclusive use of the relator, and they are for the accommodation of the public in no other sense than is the railroad itself for public use. The act of the legislature permitted that appropriation, and its effect is not impaired because the city of New York is compelled by the same act to pay a portion of the expense of construction. The power to make the improvement was conferred solely upon the relator. The city was forbidden to obstruct either the improvement, or the use of the Fourth avenue above Forty-second street for that purpose. Thus it neither controlled the improvement, nor can it be said in any sense to possess it. On the other hand the relators not only controlled the improvement, but when completed could not only use it themselves, but by lease or otherwise, and on their own terms, permit the trains of other railroads to move over it. The principles applied in the *Elevated Road Case* (82 N. Y. 459), and in the cases there cited, apply here. It can make no difference in respect to taxation, whether the rail is laid upon the surface of the

road, or placed on pillars, or carried through a covered way or tunnel. In either case the structures adopted to sustain it, or facilitate and protect its use, are, within the meaning of the law, land, and for them, as described by the commissioners, the relators were liable to be taxed.

There was, therefore, no error on the part of the commissioners, and it follows that the order of the General Term should be reversed, and the order of the Special Term affirmed.

All concur, except RAPALLO, J., not voting.

Ordered accordingly.