HANNAH CONABEER, Appellant, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY and Another, Respondents.

*Grant by an abutting owner of easements in a street to a railroad company — damages recoverable only for defective construction or negligent operation — estates in fee, burdened by easements — easements reserved in lands acquired by condemnation — railroad structure existing on land condemned for a city street.*

The grant to a corporation by an abutting owner, of her right to a portion of the street and of the right to construct a railroad thereupon, carries with it the right to operate the railroad when constructed, and the railroad company cannot be held liable to the grantor for damages caused to her abutting real estate by reason of the operation of the road, unless it be shown that the road was improperly constructed or negligently operated, and a subsequent owner of such property, whose title is derived through such grantor, has no greater rights in respect thereto than her predecessor in title.

The fact that there are incumbrances and easements upon real property is not necessarily inconsistent with the existence of a title in fee thereto.

When land is acquired for public use by condemnation proceedings, an easement therein may be reserved, with the consent of the owner, and its value may be taken into consideration upon the determination of damages.

If, when a city acquired title to an avenue, a railroad company was and had been for more than twenty years occupying the central part of the street under legislative and municipal authority for railroad purposes, and had erected therein, pursuant to such authority, an expensive and valuable structure, it cannot be assumed, in the absence of proof, that for an award of one dollar the city intended to acquire, or the corporation intended to surrender, the title to the structure, or that the railroad company intended to surrender a right long enjoyed by it of operating its road in the avenue.

APPEAL by the plaintiff, Hannah Conabeer, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 9th day of December, 1893, upon the decision of the court, rendered after a trial at the New York Special Term, dismissing the plaintiff's complaint upon the merits.

This action was begun in November, 1891, (1) to perpetually enjoin the defendants from operating their railroad in Fourth avenue in front of plaintiff's premises; (2) to compel defendants to remove their structure in front of the plaintiff's premises, and (3) to recover damages sustained by reason of the construction and operation of the road.

April 25, 1831, the New York and Harlem Railroad Company was incorporated by chapter 263 of the laws of that year, and authorized to construct a railroad from the north side of Twenty-third street to any point on the Harlem river between Third and Eighth avenues, and in 1832 it constructed its road in Fourth avenue from Forty-second street to the Harlem river. The avenue at this time was 100 feet in width. The roadbed was on an embankment in the center of the avenue, but the height and width of the embankment, as the road was originally constructed, are not definitely disclosed by the record.

On the 18th of January, 1832, Margaret McGown was the owner in fee of a tract of land bounded on the east by Fourth avenue, on the north by One Hundred and Sixth street, on the south by Ninety-seventh street, and on the west by a line so far west from Fourth avenue that it included the premises now owned by the plaintiff. On the date mentioned she, by a deed duly executed, delivered and recorded August 18, 1835, conveyed to the New York and Harlem Railroad Company certain premises described in said deed as follows:

"All that certain piece of land situate, lying and being in the Twelfth ward of the city of New York, being part of one of the avenues laid out on the map of the city of New York as the Fourth avenue, and is included within a space of twenty-four feet wide running through the center of said avenue and between 97th and 106th streets, from the day of the date thereof for and during the full period of time during which the said New York and Harlem Railroad Company may remain an incorporated company, and on which they are to construct their railroad, and for no other purpose, with the power of sloping their embankments or excavations so much farther beyond the lines of said premises hereinbefore granted as may be necessary to support their work, not, however, extending beyond the width of the avenue."

Pursuant to chapter 274, Laws of 1837, the width of the avenue from Thirty-fourth street to Harlem river was increased to 140 feet, a strip of land twenty feet in width being added to each side of said avenue. In 1853 the city laid out the avenue to the width prescribed by said act, acquiring the title thereto for street purposes, opened it and assessed the benefits on abutting lots, an assess-

ment being made on the lot now owned by the plaintiff, which was paid, and the railroad and others whose lands were taken receiving compensation for the lands acquired.  By chapter 702, Laws of 1872, entitled " An act to improve and regulate the use of the Fourth avenue in the city of New York," it was provided : " § 1.  The New York and Harlem Railroad Company is hereby authorized and required to regulate the grade of their railroad in the Fourth avenue of the city of New York, and to construct such viaducts, foot and road bridges over the same, and such excavations and tunnels under the same, with openings for proper ventilation, for the purpose of rendering the same safe and convenient to any persons crossing the same, and the railroad trains and passengers traveling thereon, in the following manner, namely :  *  *  *  From thence to Ninety-sixth street  *  *  *  and thence continuing upon the present grade to the center of One Hundred and Fifth street.  *  *  * From Ninety-eighth street to One Hundred and Fifteenth street the railroad shall be carried upon a viaduct, with stone arches or iron bridges in said viaduct over the cross or intersecting streets above One Hundred and First street, to and include One Hundred and Thirteenth street."

Shortly after the passage of this act the New York and Harlem Railroad Company, pursuant to plans agreed on between it and the city, erected in the center of said avenue crossing One Hundred and Fourth street and in front of the premises of the plaintiff, a viaduct about fifty-six feet wide and thirty-three feet high, retained by walls of masonry running parallel with the lines of the avenue, and laid on the surface of the viaduct tracks for the use of the railroad. Wherever intersecting streets were crossed openings were constructed of masonry for the accommodation of persons traveling on said streets ; one-half of the expense of such reconstruction was paid by the city and one-half by said railroad company.  The road, as it now exists, was constructed by the joint act of the city and the railroad corporation.

April 1, 1873, the New York and Harlem Railroad Company was leased to the New York Central and Hudson River Railroad Company, a corporation of this State, for 401 years, since which time the lessee has been in possession and has operated the road.

Prior to 1887 Thomas Foy, by mesne conveyances from Margaret

McGown, became the owner of part of the land owned by her when she conveyed the strip to the New York and Harlem railroad, and, on June 29, 1887, by a deed duly executed, delivered and recorded on that date, he conveyed to the plaintiff a piece of land described as follows :

" All that certain lot, piece or parcel of land, with the improvements thereon, situate, lying and being in the city of New York, and bounded and described as follows : Beginning at the southwest corner of One Hundred and Fourth street and Fourth avenue, and running thence southerly, along the westerly side of Fourth avenue one hundred feet and eleven inches, to the center line of the block ; thence westerly, along said center line and parallel with One Hundred and Fourth street, sixteen feet ; thence running northerly, parallel with Fourth avenue, and part of the way through a certain party wall, one hundred feet and eleven inches to the southerly side of One Hundred and Fourth street, and thence running easterly, along the southerly side of One Hundred and Fourth street, sixteen feet to the point or place of beginning."

At that date there was, and now is, standing on the lot, a three-story brick dwelling. The plaintiff on the date of the deed entered into possession of said premises and has ever since occupied them as a dwelling. From that time the defendants, during every day and night, have run a large number of trains over said viaduct, drawn by locomotives propelled by steam, which emit smoke, steam, soot, ashes and sparks, which, from time to time, have entered the windows of the plaintiff's dwelling and have fallen upon her premises, to the injury thereof. The operation of said road produces loud and disagreeable noises, and its construction and operation interrupt the natural passage of light and air to and from the plaintiff's dwelling.

*Joseph Ullman* and *Sol. Kohn,* for the appellant.

*Henry H. Anderson* and *Frank Loomis,* for the respondents.

FOLLETT, J. :

The plaintiff's lot is bounded on the north by the south line of One Hundred and Fourth street, and on the east by the west line of Fourth avenue, she having no title or estate in the bed or soil of

either street, and she claims no private rights or interests in either street except such as are incidental to lots abutting on streets. The title to these streets is in the city of New York in trust. By the deed of January 18, 1832, Mrs. McGown, the former owner of the fee of the plaintiff's lot, conveyed to the New York and Harlem Railroad Company a strip of land twenty-four feet wide in the center of the avenue, and extending from Ninety-seventh street to One Hundred and Sixth steeet. By the terms of this deed the grantee was authorized to construct a railroad on the land conveyed, with the right of extending the embankment on which the rails were to be laid to the exterior lines of the avenue. At the date of this conveyance the avenue was 100 feet wide, and on each side of the land conveyed and within the avenue, there was a strip of land thirty-eight feet wide the title to which was not conveyed, but the right to cover these strips with an embankment was expressly granted. The embankment as now constructed is fifty-six feet wide, covering the land conveyed by Mrs. McGown, and a strip sixteen feet wide on each side of the strip granted by her, which is twenty-two feet less on each side of the strip conveyed than the defendants, by the grant, were authorized to use. By the conveyance, the grantee was authorized to construct a railroad on the subject of the grant, and, if necessary, to occupy the whole width of the avenue adjacent to the grantor's remaining land. The grant of the right to construct a railroad carried with it the right to operate it when constructed, and the defendants could not have been held liable to Mrs. McGown for incidental damages caused to her remaining property by operating the road, without showing that the road was improperly constructed or negligently operated. The plaintiff stands in the shoes of her predecessor in title, and has no greater rights than she had. There is no assertion that the road was improperly constructed. On the contrary, the proof is that it was built in accordance with the statute of 1872 and the requirements of the city authorities, and it is not alleged or proved that the defendants have been negligent in the operation of the road. But the plaintiff insists that when the city in 1853 increased the width of the avenue from 100 feet to 140 feet, and acquired the title to all lands within its exterior lines, including the strip granted to the railroad, Mrs. McGown's grant was annulled, and the successors to her

title were from that date vested with all the rights in the avenue that they would have had in case no such conveyance had been made by her. In support of this contention it is urged that this avenue having been laid out, pursuant to chapter 86 of the Revised Laws of 1813, section 178 of which provides (Vol. 2, R. L. 1813, p. 414) that the city shall become seized in fee of lands taken for streets, subject to the trust that lands so acquired shall be kept open and used as streets, the title of the railroad to the strip of land in this street was not only acquired, but from that time its right to use the street for railroad purposes became subject to the right of the abutting owners to recover damages for injuries to their street easements occasioned by the subsequent use of the street by the railroad.

In support of this position it is asserted that the city could not acquire the fee of the street, subject to the right of the railroad to use a portion of it for its purposes. Incumbrances and easements burden many estates, the title to which is held in fee, and such burdens are not necessarily inconsistent with a title in fee. When the city acquired the title to this avenue the New York and Harlem Railroad Company was, and for more than twenty years had been, occupying the central part of the street, under legislative and municipal authority, for railroad purposes, and had erected therein, pursuant to such authority, an expensive and valuable structure, and it cannot be assumed, in the absence of proof, that for an award of one dollar the city intended to acquire, or the corporation to surrender, its title to the structure, or that the railroad intended to surrender its long-enjoyed right to operate its road in the avenue. The practical construction by the city and by the railroad of the effect of the acquisition of the title to this street is opposed to such a contention. The city never claimed to be the owner of the structure, and the corporation was not compelled to remove it, nor was its right to use it abridged, and it has been held that the structure is not the property of the city but of the railroad. (*People ex rel. The N. Y. & H. R. R. Co.* v. *Comrs. of Taxes,* 101 N. Y. 322.) By chapter 702, Laws of 1872, the title of the railroad to its structure in the avenue and the right to continue to operate its road therein are expressly recognized. We are referred to *Hill* v. *The Mohawk & Hudson R. R. Co.* (5 Den. 206;

affd., 7 N. Y. 152) as an authority for the position that when land is acquired for public use by condemnation, an easement therein cannot be reserved in favor of the person from whom acquired. This case is not an authority for this position, as it simply holds that an easement in lieu of or in diminution of the owner's damages cannot be reserved without the consent of the owner of the property taken. With the consent of the owner an easement may be reserved and considered upon the question of damages. (Mills Em. Dom. § 112, and cases cited; Randolph on Em. Dom. §§ 203, 204.)

In the case at bar it is apparent that the railroad assented to an award of one dollar as compensation for its land taken, in consideration that its easement in the street was not to be disturbed, but was to be continued.

We think the judgment is right, and that it should be affirmed, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment affirmed, with costs.