PEOPLE ex rel. NEW YORK CENT. & H. R. R. CO. v. PURDY et al., Com'rs of Taxes and Assessments.

(Supreme Court, Special Term, New York County. April 29, 1914.)

1. TAXATION (§ 65*)—REAL OR PERSONAL PROPERTY—STRUCTURES ON LAND OF OTHERS—EASEMENTS.

Where structures are erected by persons not the owners of the land, they become part of the realty, and as such are taxable as the landowners' property, except where the parties have by agreement created an ownership in the property so attached, separate from the ownership of the fee, or where the fee is subject to easements, and the structures sought to be assessed are appurtenant to the easements and not to the fee.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 150; Dec. Dig. § 65.*]

2. RAILROADS (§ 98*)—BRIDGES OVER STREETS—OWNERSHIP—CONSTRUCTION EXPENSE.

The fact that a railroad company had been obliged to meet the larger portion of the expense of constructing bridges to carry streets over its

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tracks does not give it title to the bridges, which, being erected in the streets, are the property of the city.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 291, 292, 296; Dec. Dig. § 98.*]

3. RAILROADS (§ 94*)—BRIDGES OVER TRACKS—PAYMENT OF EXPENSES—AUTHORITY OF STATE.

The state may compel a railroad company, at its own expense, to eliminate crossings at grade by a depression of its tracks and the erection of bridges to carry streets over its right of way.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 266-273; Dec. Dig. §§ 94.*]

4. TAXATION (§ 145*)—RAILROADS—BRIDGES OVER STREETS—OWNERSHIP.

Where relator, under different agreements, constructed 58 bridges, carrying as many streets, in the borough of the Bronx over its right of way and tracks, which bridges were located entirely in the street and used by the railroad company only in some cases to support signal apparatus, such bridges belonged to the city and were not taxable to the railroad company as its property, but not so as to a tunnel constructed by the railroad for its exclusive use under a street.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 252, 253; Dec. Dig. § 145.*]

Certiorari by the People, on relation of the New York Central & Hudson River Railroad Company, against Lawson Purdy and others, as Commissioners of Taxes and Assessments of the City of New York. Judgment for plaintiff.

Alexander S. Lyman, of New York City (George H. Walker, of New York City, of counsel), for relator.

Frank L. Polk, Corp. Counsel, of New York City (William J. Clarke, of New York City, of counsel), for defendants.

BLANCHARD, J.   The certiorari in this proceeding was issued to review the determination of the tax commissioners in assessing against the New York Central & Hudson River Railroad Company, the relator herein, as real property of the company, 58 bridges carrying as many highways of the city over the company's right of way and railroad tracks.   By agreement entered into between the parties on January 23 and January 24, 1913, the total valuations of the highway bridges involved in this proceeding were fixed at $768,400.   The relator in its petition alleges no inequality or overvaluation, and seeks, not a reduction, but a cancellation, of the assessments upon the ground that the bridges constitute and are such and so much real property of the city of New York.   An examination of the stipulations read into and made a part of the record shows that 33 of the 58 bridges were constructed pursuant to chapter 681 of the Laws of 1886 and chapter 721 of the Laws of 1887, and agreements between the department of public parks and the railroad authorized by those acts; the expense of construction being met entirely by the company.   It appears, however, that 6 of the 33 were subsequently reconstructed by and at the expense of the city.   The remaining bridges were constructed pursuant to several Twenty-Third and Twenty-Fourth ward improvement acts, grade crossing acts, and private agreements be-

tween the corporation and the city of New York; the expense of construction therefor in some cases being met by the company, in others by the city, and in some instances proportionately distributed. It is likewise to be noted that in the various acts and agreements, by virtue of which the structures were erected, the provisions in respect of the obligation to maintain and repair them are not uniform. It further appears from stipulation numbered 17 that the city owns the fee of the land on and over which the bridges are located. The stipulation in question declares that:

"All of the 58 bridges * * * are bridges carrying public highways in the borough of the Bronx, New York City, over the right of way and tracks of the railroads owned and operated as lessee by the relator in these proceedings, and all of said highways were laid out and opened subsequent to the purchase of the right of way of said railroads and the construction of said railroads thereon. In and by each of these respective proceedings, and on behalf of the city of New York in and for appropriation of the right of way, such street crossing, the city of New York acquired from the railroad company the fee of the land embraced within the bounds of such crossing, all subject, however, to the easement for railroad purposes of relator or its lessor railroad company."

[1] It is urged by the company that the present case should be governed by those precedents which hold that, where structures are erected by persons not the owners of the land, they become part of the realty, and as such the property of the landowner. People ex rel. Internat. Navigation Co. v. Commissioners, 153 N. Y. 100, 47 N. E. 46. Exceptions to this rule are to be found where the parties have by agreement created an ownership in the property attached to the land separate from the ownership of the fee (Miller v. Board of Assessors, 93 N. Y. 308); but an exception more universally recognized is where the fee is subject to certain easements, and the structures sought to be assessed are appurtenant to said easements and not to the fee (People ex rel. N. Y. El. R. R. v. Commissioners of Taxes, 82 N. Y. 459). There is nothing in the construction agreements between the city and the railroad company which determines this question; and, even though it were so determined by the agreements, it is doubtful whether any such provision would be binding upon the court. The solution of the problem would therefore seem to depend upon whether the facts of the case are within the purview of the second exception; in other words, whether or not the bridges are appurtenant to the easement of the railroad. The defendants contend that it is not necessary that the fee of the land, over which the bridges were constructed, should be in the corporation assessed, and cite several cases in support of this view. In Smith v. Mayor, 68 N. Y. 552, the court upheld an assessment upon a pier constructed upon land in New York Harbor belonging to the city; in People ex rel. D. & F. R. R. v. Cassity, 46 N. Y. 46, an assessment was sustained upon the tracks of relator laid upon the streets of the town of Dunkirk, and in the Elevated Railroad Case, supra, after a consideration of authorities, the court upheld an assessment on the foundations, columns, and superstructures of the railroad, stating that the structures in question were within the statutory definition of land, and that the corpora-

tion or person owning fixtures may be assessed therefor, although the fee of the land to which they are affixed is in another. Those cases differ from the one at bar, however, in that the ownership of the structures assessed was apparently undisputed, and that the owners had a separate and distinct interest in the structures involved, as evidenced by the user made thereof. The relator in this proceeding denies ownership of the bridges, and the only use to which they have been put by the railroad is that there have been attached to some of them certain signal structures of the company. In one case it was even deemed necessary to make provision for this privilege in the construction contract.

[2] The fact that the company has been obliged to meet the larger portion of the expense of construction is not sufficient to give it title to the bridges. I feel I must hold that the ownership of these structures is in the city. They form an essential part of its street system, and were evidently constructed to give effect to the purpose for which the land within the bounds of the various crossings was acquired from the company by the city. Were they removed by the city, the operation of the railroad would in no way be impaired. People ex rel. New York & Harlem R. R. v. Commissioners of Taxes, 101 N. Y. 322, 4 N. E. 127, is apparently the only case which gives color to the contention of the defendants in this action. In that case the judgment of the court was to the effect that the tunnels, tracks, superstructures, substructures, stations, viaducts, and masonry of the company situated upon Fourth avenue in the city of New York, constructed under the so-called Harlem tunnel agreement (chapter 702 of the Laws of 1872), were land and taxable against the company. In this agreement it was expressly stipulated that the tunnels and tracks were to be exclusively for the uses and purposes of the railroad, and, in confirming the action of the commissioners in including as tangible property of the company several foot and road bridges crossing the tracks, the court said:

"The premises, therefore, upon which these structures are placed, are in the exclusive use of the relator, and they are for the accommodation of the public in no other sense than is the railroad itself for public use."

The fact in the present case, however, that the bridges are located on and over land owned by the city in fee would seem to be sufficiently dissimilar to render that case ineffective as a precedent in this proceeding. It does not appear necessary for me to pass upon the question whether or not the bridges erected pursuant to grade crossing acts were constructed by virtue of an exercise of the police power of the state.

[3] That the state has the right to compel a railroad company at its own expense to eliminate crossings at grade by a depression of its tracks and the erection of bridges to carry streets over its right of way is too well recognized to admit of discussion; but whether, after the erection of such structures, the ownership thereof can be fastened upon the railroad company for purposes of taxation, where, as in this case, they do not rest upon any tangible property of the com-

pany and are not an essential and necessary part of the railroad, is another matter.

[4] I know of no authority to support such action. As the highway bridges are not appurtenant to the easement of the railroad and are not essential to the operation of its trains, I believe, on broad grounds of equity, the company should be granted relief. This view would seem to find support in two recent cases in the Court of Appeals.

In People ex rel. B., L. & E. T. Co. v. Tax Commissioners, 209 N. Y. 496, 103 N. E. 776, the question involved was whether pave-ment which a street railroad corporation is obliged to construct and maintain between and near its tracks, pursuant to the provisions of section 178 of the Railroad Law (Cons. Laws, c. 49), was to be treated as tangible property of the corporation in assessing the value of its special franchise. The opinion of the court in part follows:

"Having required the corporation thus to contribute to the general public welfare, the Legislature could not have intended to impose a tax upon the tan-gible property so contributed. The materials which go into the paving are really purchased by the railroad company and turned over to the municipality for the benefit of the community at large. * * * The price which the rail-road company is willing to pay to lay down and maintain the statutory pave-ment is some evidence of the value of the intangible right to operate the rail-road in the street, and may therefore properly be considered by the state board of tax commissioners in ascertaining the value of such special franchise; but, in so considering the cost, the board is not to treat the pavement as constitut-ing any part of the tangible property of the railroad company, inasmuch as it does not belong to the structure of the railroad and is not necessary for its operation."

Another case between the same parties, reported in 209 N. Y. at page 502, 103 N. E. at page 778, had to do with an assessment on a railroad viaduct constructed by the company pursuant to a contract with the town of Westfield. In holding that the viaduct was the tangible property of the company for the purpose of assessing the special franchise tax, the court said:

"Although the contract is carefully drawn so as to declare that the structure is at all times and for all purposes to be deemed a public highway, it is never-theless manifest that the viaduct or some structure of like character in the same locality is essential to the operation of the relator's railroad there— just as necessary, as was pointed out by the learned justice who heard the case at Special Term, as are the ties laid in a street to support its rails."

It would seem, therefore, that the language employed by the court in these recent cases is fatal to the contention of the defendants in this action. I believe, however, that the assessment upon the structure appearing upon the assessment rolls under the head of Port Morris Branch as highway bridge, Jackson or Robbins avenue, 62a, should be upheld. Instead of building a bridge at that point, by agreement with the city the railroad constructed a tunnel. The relator runs its trains through this tunnel and has exclusive use thereof, and it must therefore be deemed a necessary part of the railroad construction.

It follows from the foregoing that, except in the instance just noted, the relator is entitled to the relief it seeks.

Judgment accordingly.