For the year 1909 there were included in the assessment of relator's special franchise in the city of Oswego the cost paid by it of constructing a subway under its railroad in one of the streets of Oswego, and the value of two overhead bridges whereby other streets in said city were carried over its line of railroad. These items were thus included on the theory that said subway and said bridges were "tangible property" of the relator "situated in, upon, under or above any street, highway, public place or public waters in connection with the special franchise," and, therefore, were assessable as part of its special franchise. (Tax Law [Cons. Laws, ch. 60], section 3.) Relator thereafter instituted these proceedings to be relieved from said items of assessment, and the referee to whom the matter was referred held that it should be thus relieved. The Special Term overruled the referee and upheld the assessment in its full scope in respect of the bridges, but held that the assessment for the subway should not include the cost of part of the approaches of the subway which had been included by the assessors. The Appellate Division likewise held that the relator was properly assessed for an amount equal to the value of the bridges, but again reduced the assessment in respect of the subway so as to include only what was equivalent to the cost of constructing said subway as it lay immediately under the relator's tracks and not any of the cost of the approaches.
It now becomes our duty to give the reasons why we think that the referee was correct in holding that the relator was not properly assessable on account of said items, and the Special Term and Appellate Division incorrect *Page 437 
in their views that said subway and bridges constituted tangible property, and in order to do this it will be necessary to state very briefly some additional facts.
For many years the relator had possessed a franchise and operated its railroad through Schuyler street in the city of Oswego. For the purpose of eliminating a grade crossing Seventh street, which theretofore entered but did not intersect Schuyler street, was continued across the latter street by the construction of a subway under relator's road. The proceedings which led to this new construction were initiated upon the petition of the city of Oswego and the construction was ordered and the relator compelled to bear its share of the cost thereof in accordance with the provisions of what was then section 65 of the Railroad Law. It does not appear clearly when the overhead bridges were constructed with reference to the construction of relator's tracks, but I do not see that that is material for concededly under the Railroad Law the relator was compelled to bear a certain portion of the cost of said bridges which, as already stated, served to carry streets across its line. Thus we have it that in the case of each item there has been included in the assessment of the relator an item for the cost or value of a structure carrying a street across or under relator's railroad on the ground that such structure was part of its tangible property. It seems to me that this conclusion involves a misconception of the fundamental purpose and nature of the structure. In each case the structure constituted part of a public street, and under ordinary rules belonged to the municipality. It was not constructed for the purpose of enabling the relator to operate its road, but for the purpose of enabling the public to obtain a safer and more convenient method of passage over that road after it was so constructed. The relator was compelled to contribute to the expense of construction under the taxing power of the state, which had authority to place this burden upon it, and this burden of taxation was so *Page 438 
placed upon it for the benefit of the public as part of the price of the privileges which the relator enjoyed rather than on any theory that the structure was necessary to the operation of its railroad or that it would become the owner or possessor thereof. Its only interest, so far as concerns the question now being discussed, was that of a contributor and not of an owner. The structure was part of a public street and the relator had no control over the same or power to change it except upon the authority of proper officials. If it should have attempted to take possession of or remove or alter the subway or bridges, as it ought to have had the power to do if they were its property, no one doubts that its activities in that direction would have been quickly and summarily enjoined.
It is suggested that the abutments of the bridges may have rested on its right of way and that its tracks may have rested on top of the subway, and from these circumstances especially, which seem to be assumed rather than proved, it is argued that the structures must be regarded as its property. It seems to me that this special argument involves a total eclipse of substantial and fundamental features by mere incidents. In the case of the subway the relator's tracks were properly laid on the surface of the street. When the subway was constructed and the surface of the street taken out from under its tracks, the latter very likely may have rested in some form on the top of the subway. But, because the prior location of the tracks was thus adjusted to the construction of the subway, which was forced upon the relator, it would be far fetched to assume or hold that the subway was constructed in the interest of the railroad for the purpose of carrying its tracks. Moreover, this assessment was for the cost of the construction of the subway and not for the value of the relator's rails which might be laid on top of it.
In like manner the nature and purpose of the overhead bridges are not to be obscured so far as the present question *Page 439 
is concerned because some part thereof may have rested upon relator's right of way. The bridges were constructed for the purpose of carrying the streets over the railroad, and if in their construction some part was conveniently rested upon relator's land their nature and purpose were not thereby changed. They were thus located for the sake of convenience or safety and not with any idea that they would thereby become a fixture belonging to the relator.
The authorities relied on by counsel for the defendant do not, in my opinion, at all sustain the decision which has been made.
In the case of People ex rel. N.Y. Elev. R.R. Co. v.Commissioners of Taxes, N.Y. (82 N.Y. 459), the question was whether the foundation, columns and superstructure of an elevated railroad came within the statutory definition of "land" as then formulated by the Revised Statutes and were liable to taxation as such, and in the case of People ex rel. N.Y. Harlem R.R. Co. v. Comrs. of Taxes, N.Y. (101 N.Y. 322), the question likewise was whether a tunnel with its incidental structures constructed for the express purpose of enabling the relator to maintain and operate its railroad was "land" within the same definition. It needs only an inspection of the definition prescribed by the statute at that time to see that on a perfectly fair construction it included the structures which were under consideration, and that the question presented in those cases was entirely different than the one now before us, where we are called on to determine whether an ordinary highway bridge or a subway constructed in and as part of a street is the "property" of a railroad which runs under or over such structure.
The case of People ex rel. Niagara Falls Hydraulic Power Mfg. Co. v. State Board of Tax Commissioners (202 N.Y. 426) did not lay down any rule which covers this case. There the question was raised whether certain *Page 440 
bridges constructed by relator under an agreement across its power canal were its tangible property or the property of the municipality, but the court did not pass on this question. It simply decided that the value of these bridges, constructed by the relator as part of the price of the privileges which it obtained, might very well be included in an estimate of the value of its special franchise, and that the assessment could be sustained on that basis.
On the other hand, we think that there are two recent decisions in this court which considered together make it perfectly plain that these structures were not the property of the relator, and these are the cases of People ex rel. Buffalo L.E.T. Co. v.State Board of Tax Commissioners (209 N.Y. 496, 499) andPeople ex rel. Buffalo L.E.T. Co. v. State Board of TaxCommissioners (209 N.Y. 502, 504).
In the latter case a viaduct had been constructed by the relator pursuant to an agreement with the town in which it was located, under which the cost was apportioned between them, and the company undertook "to maintain, repair and if necessary reconstruct said bridge, viaduct and approaches, and each and every part thereof during the term of the franchise," and the viaduct or some structure of like character was essential to the operation of the railroad, and the question was whether the structure could be considered to be the relator's tangible property. It was held that it could, and Judge BARTLETT writing in behalf of the court made it perfectly plain that although the contract was carefully drawn so as to declare that the structure at all times and for all purposes should be deemed a public highway, it was "nevertheless manifest that the viaduct, or some structure of like character in the same locality, was (is) essential to the operation of the relator's railroad there — just as necessary * * * as are the ties laid in a street to support its rails," and the fact that the public enjoyed a joint right of user made the viaduct *Page 441 
none the less a part of the tangible property of the railroad company.
In the first case cited the question arose whether pavement laid by a railroad company between and near its tracks in accordance with the provisions of the Railroad Law should be treated as its tangible property, and Judge BARTLETT again writing in behalf of the court demonstrated that it was not such property. He said: "There is nothing in this language (referring to the provisions of the statute compelling the railroad company to maintain the pavement) which suggests the idea that a corporation * * * is to become the owner of any part of a street, avenue or public place which it keeps in repair in compliance with the mandate of the statute. It would be a strange arrangement, indeed, which should vest part of the ownership of a street pavement in a municipal corporation and part in a street railroad company. * * * As was declared by Chief Judge CULLEN inCity of Rochester v. Rochester Railway Company (182 N.Y. 99,112), the provision of the Railroad Law requiring street surface railroad companies to pay the cost of paving between their tracks and for two feet outside thereof is an exercise of the taxing power. The tax is paid in the form of paving and other materials for street construction. Having required the corporation thus to contribute to the general public welfare, the legislature could not have intended to impose a tax upon the tangible property so contributed."
When we apply the principles so clearly laid down in these cases for the purpose of determining what is and what is not tangible property under the statute, it seems very plain that the present case is analogous to the paving case and not to the viaduct case. As has already been stated, the subway and the overhead bridges were not constructed to enable the railroad to operate its road, which could have been done perfectly well without either, but they were constructed for the benefit and safety of *Page 442 
the public and were part of the public street, and the relator was compelled to contribute to the cost of their construction not to the end of acquiring a property in them but as a burden which it might be justly called on to bear. If it be true as asserted that the subway was indirectly for the benefit of the relator in securing an avoidance of the dangers of a grade crossing, that benefit, just as was said in the paving case and in the power canal case, may be taken into account in estimating the value of the intangible special franchise.
In my opinion the order of the Appellate Division and of the Special Term should be reversed and the report of the referee confirmed and the amount of relator's assessment reduced by the amounts which were included therein for the bridges in and upon Albany street and Mexico road respectively, and for the subway in Schuyler street, with costs to relator in this court and the Appellate Division.
WILLARD BARTLETT, Ch. J., COLLIN, CUDDEBACK, HOGAN, CARDOZO and SEABURY, JJ., concur.
Ordered accordingly.