THE PEOPLE OF THE STATE OF NEW YORK ex rel. LEHIGH VALLEY RAIL WAY COMPANY et al., Respondents, against WILLIAM H. WOODWORTH, as Assessor of the City of Rochester, et al., Appellants.

Argued January 14, 1947; decided April 17, 1947.

*William H. Emerson, Corporation Counsel* (*Frederick J. Wilkens* of counsel), for appellants. I. The bridge is real property owned by Lehigh Valley, and taxable as such. (Tax Law, § 2, subd. 6; *People ex rel. N. Y. C. R. R. Co.* v. *State Tax Comm.*, 292 N. Y. 130; *People ex rel. N. Y. & H. R. R. Co.* v. *Commissioners of Taxes*, 101 N. Y. 322; *People ex rel. New York Central R. R. Co.* v. *Graves*, 260 App. Div. 227, 286 N. Y. 580; *People ex rel. Hudson River Day Line* v. *Franck*, 257 N. Y. 69.) II. The contributions made by the city and State to the cost of the bridge do not serve to give them any interest in its ownership. (*People ex rel. N. Y. O. & W. Ry. Co.* v. *Tax Comrs.*, 215 N. Y. 434; *People ex rel. New York Central R. R. Co.* v. *Graves*, 260 App. Div. 227, 286 N. Y. 580; *Matter of New York Central R. R. Co.* v. *Ferris*, 255 App. Div. 112, 280 N. Y. 658; *People ex rel. N. Y. & H. R. R. Co.* v. *Commisioners of Taxes*, 101 N. Y. 322.)

*William F. Gleeson* and *Vernon C. Ryder* for respondents. The bridge is the property of the municipality and therefore not taxable to the railroad. (*People ex rel. N. Y. O. & W. Ry. Co.* v. *Tax Comrs.*, 215 N. Y. 434; *Matter of City of New York* [*Saratoga Ave.*], 226 N. Y. 128; *Matter of City of New York* [*Newport Ave.*], 218 N. Y. 274; *Matter of Central Hudson G. & E. Corp.* v. *Morgenthau*, 234 App. Div. 530, 259 N. Y. 569; *N. Y. C. & H. R. R. R. Co.* v. *City of Buffalo*, 200 N. Y. 113.)

LEWIS, J. This is a certiorari proceeding by the Lehigh Valley Rail Way Company and Lehigh Valley Railroad Company to review assessments of an item of real property listed upon the assessment rolls of the city of Rochester for the years 1940, 1941 and 1942. It appears of record that all railroads,

lands and bridges owned by the Lehigh Valley Rail Way Company are leased to Lehigh Valley Railroad Company. Accordingly, for the purposes of this opinion, it will be convenient to refer to the two respondent railroad corporations as a single entity under the name " Lehigh ".

The property involved in this proceeding is a railroad bridge which carries the Lehigh tracks over Elmwood Avenue in the city of Rochester. A claim of overvaluation originally asserted by Lehigh has been withdrawn leaving for our consideration the single issue whether the bridge is properly assessed as real property owned by Lehigh. It is Lehigh's position that the bridge is owned by the City of Rochester and hence that it is illegally assessed against the respondents.

The issue thus tendered was submitted to an official referee who, upon stipulated facts, concluded that the Elmwood Avenue bridge is not the property of Lehigh and ruled that the assessments here challenged are illegal. Thereafter, upon appeal by the respondents, the Appellate Division unanimously affirmed an order of Special Term confirming the referee's report. The case comes to us upon appeal by the respondents by our leave.

In 1921 and for a period of years prior to that date the Lehigh tracks had crossed Elmwood Avenue at grade. Those tracks were laid upon land of which title in fee had been acquired by Lehigh's predecessor in 1903. The Lehigh right of way at and near its former and present crossings of Elmwood Avenue runs parallel to and adjoins the right of way of the Erie Railroad. The order of the Public Service Commission, presently to be considered, which called for the relocation of Elmwood Avenue so that it passed under the rights of way of both Lehigh and Erie, also provided that a single underpass to accommodate traffic on Elmwood Avenue as relocated was to be spanned by two separate railroad bridges. Those bridges — designed and to be built as separate structures — were located parallel and close together, one of which was to support the tracks of Erie and the other, which is the bridge with which we are now concerned, was to support the right of way and tracks of Lehigh.

In December, 1921, the City Council of the City of Rochester adopted an ordinance declaring that public safety required the separation of the grades of the Lehigh and Erie tracks from the grade of Elmwood Avenue by depressing that street beneath

the two railroad rights of way. The proposed change involved the relocation of Elmwood Avenue so that it would pass under the tracks of the two railroads at a point four hundred feet south of the existing crossing. On the same date a separate ordinance was adopted declaring the intention of the city to acquire property specified therein for the proposed change in the location of Elmwood Avenue. Subsequently the city acquired property necessary for the new street location but the property thus acquired extended only up to and did not include any portion of the Lehigh right of way. In that connection the stipulated fact is that at all times from 1903 to date Lehigh or its predecessors have held title in fee simple to land constituting its right of way including the site of its present Elmwood Avenue bridge which is the subject of the assessments now challenged.

On April 4, 1924, the city filed with the Public Service Commission a petition alleging, pursuant to section 91 of the Railroad Law, that public safety required the elimination of the railroad grade crossing at Elmwood Avenue and to that end requested an order directing that the grade crossing at that point be closed and that traffic be diverted through an underpass along a relocation of Elmwood Avenue to be constructed below the grade of the railroads. Thereafter, at hearings held by the Public Service Commission to determine whether public necessity required such changes, a controversy arose between the city and Lehigh as to the width of the proposed Elmwood Avenue underpass. The city urged that the underpass should be one hundred feet wide to accommodate existing and contemplated traffic conditions on that street. Lehigh objected to a width in excess of sixty-six feet. These different views of the problem were composed by an agreement between the city and the two railroads — Lehigh and Erie — whereby the city agreed to bear a portion of the cost of the elimination in excess of its statutory share, in return for which Lehigh withdrew its objection to the additional width.

In May, 1927, the Public Service Commission issued its order directing that the elimination proceed pursuant to the Grade Crossing Elimination Act. (L. 1926, ch. 233, as amd. by L. 1927, ch. 445.) Under that order Lehigh and Erie were to prepare plans and specifications for the elimination and do all

the work thereby authorized and directed. The plans for the two separate parallel bridges and for an underpass affording a depressed way for Elmwood Avenue under the tracks of the two railroads were approved by the commission in 1927. Thereafter Lehigh constructed its bridge, the cost of which was paid by the State of New York, the City of Rochester and Lehigh in proportions fixed by statute (Railroad Law, § 94), subject to the assumption by the city of items of additional cost resulting from its demand for an underpass of width in excess of sixty-six feet.

Important to our present inquiry is the fact that the Lehigh bridge here in controversy — designed and used only for railroad traffic — was constructed upon the right of way owned in fee simple by Lehigh. That fact, we think, serves to differentiate our present problem from facts which became decisive in *People ex rel. N. Y., O. & W. Ry. Co.* v. *Tax Comrs.* (215 N. Y. 434) — hereinafter referred to as the *Oswego* case — upon the authority of which the respondents have thus far succeeded in the present litigation.

In the *Oswego* case — which involved the assessment of a special franchise — the tracks of the relator railroad had long occupied under a local franchise a part of Schuyler Street, an established public thoroughfare running east and west in the city of Oswego. One of the streets leading into Schuyler Street from the south, but not intersecting it, was Seventh Street. In an effort by the City of Oswego to accomplish a street improvement project which had as its objective the extension of Seventh Street northerly from Schuyler Street, the problem arose as to how to avoid the danger to traffic on Schuyler and Seventh Streets which would result if railroad traffic east and west along relator's tracks in Schuyler Street was permitted to cross Seventh Street (extended) at grade. That problem was solved when the city depressed the grade of Seventh Street to an extent permitting its traffic north and south to pass under Schuyler Street through an underpass built to carry over Seventh Street (extended) the east and west traffic on Schuyler Street — including railroad traffic on the relator's tracks. After the underpass was built and the railroad had contributed its agreed share of the cost thereof, the taxing authorities attempted to increase the special fran-

chise assessment against the relator railroad for the franchise right by which its tracks occupied a part of Schuyler Street, by including within such assessment the portion of the cost of the underpass paid by the railroad. From the opinion of this court, per HISCOCK, J., it appears (p. 436) that the inclusion by the taxing authorities of the relator's share of the cost of the underpass was " * * * on the theory that said subway * * * [was] ' tangible property ' *of the relator* ' situated in, upon, under or above any street, highway, public place or public waters in connection with the special franchise,' and, therefore [was] assessable as part of its special franchise. (Tax Law [Cons. Laws, ch. 60], section 3.) " (Emphasis supplied.) After commenting on the fact that " * * * in the case of each item there has been included in the assessment of the relator an item for the cost or value of a structure carrying a street * * * under relator's railroad on the ground that such structure was part of its tangible property " the opinion states (p. 437) — " The relator was compelled to contribute to the expense of construction under the taxing power of the state, which had authority to place this burden upon it, and this burden of taxation was so placed upon it for the benefit of the public as part of the price of the privileges which the relator enjoyed rather than on any theory that the structure was necessary to the operation of its railroad or that it would become the owner or possessor thereof. *Its only interest, so far as concerns the question now being discussed, was that of a contributor and not of an owner.* The structure was part of a public street and the relator had no control over the same or power to change it except upon the authority of proper officials. If it should have attempted to take possession of or remove or alter the subway or bridges, as it ought to have had the power to do if they were its property, no one doubts that its activities in that direction would have been quickly and summarily enjoined." (Emphasis supplied.) It is thus apparent that insofar as the decision in the *Oswego* case relates itself to our present problem, a decisive fact in that case, which served to relieve the relator railroad from the added tax burden which it resisted, was the circumstance that it did not own the portion of Schuyler Street on which its tracks were laid but occupied that street only under a local franchise right.

In the case at hand the stipulated facts, as we have seen, are to the contrary. Here, significantly, two separate bridges span the new Elmwood Avenue underpass, one of which — the only bridge with which this proceeding is concerned — is constructed wholly upon the right of way owned in fee by Lehigh and used solely by Lehigh for railroad purposes. In view of differing relevant facts upon which rests the decision in the *Oswego* case we do not regard that ruling as supporting the position of Lehigh in this proceeding. Indeed, in the opinion in that case there are statements which strongly support the position now taken by the appellants.

A decision which gives direction to our view of the proceeding now before us is *People ex rel. N. Y. C. R. R. Co.* v. *Graves* (260 App. Div. 227, affd. 286 N. Y. 580). That litigation was an outgrowth of an extensive project for the elimination of railroad grade crossings in the city of Syracuse, the purpose of which was to promote public safety and convenience. By that proceeding the relator railroad challenged the legality of special franchise taxes based upon the assessed values of railroad bridges which it had been directed to erect to carry its tracks across twenty-seven public streets. Although the relator conceded that it or its lessor owned in fee the lands abutting on both sides of twenty-three of those street occupations, it contended that the structures within the streets were not its tangible property, within provisions of subdivision 6 of section 2 of the Tax Law, and that accordingly they did not afford legal bases for the assessment of special franchise taxes against the relator. That conclusion, it was argued, followed from the fact that at a time when its tracks and railroad facilities within the city of Syracuse were ample for local operating needs, the Public Service Commission had ordered the elimination of local railroad grade crossings solely for the public benefit, the cost of which had been borne — 49% by the State of New York, 1% by the County of Onondaga and 50% by the railroad. (L. 1928, ch. 825, § 6, as amd. by L. 1929, ch. 656, § 6.) The ruling by the Appellate Division (260 App. Div. 227) affirmed by this court (286 N. Y. 580) was that the special franchise taxes there involved had been legally assessed. (See, also, *Matter of N. Y. C. R. R. Co.* v. *Ferris*, 255 App. Div. 112, affd. 280 N. Y. 658; *People ex rel. Western N. Y. & Penn. Ry. Co.* v. *Tax Comrs.*, 256 App. Div. 104, affd. 281 N. Y. 639.)

We recognize that in the *Graves* case (*supra*) — a special franchise proceeding — the relator railroad resisted taxes imposed by reason of its occupancy of certain public streets, while by the present proceeding Lehigh resists the assessment of the bridge in suit as an item of real property which the city asserts is owned by Lehigh. However, we find that point of difference in the two cases to be a circumstance favorable to the appellants' position: In the case at bar Lehigh owned and had prior occupancy of the land spanned by the new bridge over the new Elmwood Avenue underpass; while in the *Graves* case (*supra*) the lands spanned by the new bridges involved had previously been dedicated to public use for street purposes. In each case the question of prior ownership or occupancy is decisive of the particular issue to be determined. (Cf. *People ex rel. N. Y. C. & H. R. R. Co.* v. *Woodbury,* 203 N. Y. 167, 179–180; *People ex rel. Western N. Y. & Penn. Ry. Co.* v. *Tax Comrs.,* 256 App. Div. 104, affd. 281 N. Y. 639.)

In its brief before us Lehigh has conceded " that the fact that the City contributed to the cost of constructing the improvements does not of itself confer ownership on the City." (See, also, *People ex rel. N. Y., O. & W. Ry. Co.* v. *Tax Comrs., supra,* pp. 437–438; *People ex rel. N. Y. & H. R. R. Co.* v. *Comrs. of Taxes of N. Y.,* 101 N. Y. 322, 327.)

By subdivision 6 of section 2 of the Tax Law — " The terms ' land,' ' real estate,' and ' real property,' as used in this chapter, include the land itself above and under water, all buildings and other articles and structures, substructures and superstructures, erected upon, under or above, or affixed to the same; * * * all bridges, * * * all railroad structures, substructures and superstructures * * *."

In *People ex rel. N. Y. & H. R. R. Co.* v. *Comrs. of Taxes of N. Y.* (*supra*) certain railroad viaducts and structures were erected pursuant to " 'An Act to improve and regulate the use of the Fourth Avenue in the city of New York " to carry the tracks of the relator railroad company over Fourth Avenue (L. 1872, ch. 702). The railroad urged that these structures formed " part of a public work " and belonged " not to the railroad company, but to the city ". Holding them taxable as *real estate* against the railroad company, this court stated (pp. 325–326): " That the things in question form an essential and necessary part

of the relator's railroad, as now constructed within the city of New York, cannot be doubted; that of themselves they constitute land within the definition of that term, given in the statute relating to property liable to taxation (1 R. S., tit. 1, chap. 13, art. 1, § 2), is equally clear (*People, ex rel. Elevated R. R. Co.* v. *Comrs. of Taxes,* 82 N. Y. 459), and if so, they are liable to assessment to whomsoever has that interest in the real estate which will protect the erection or affixing thereon of these structures, and their possession."

These considerations have led us to conclude that the Elmwood Avenue bridge erected by Lehigh on its own land to carry only its own railroad traffic is a railroad bridge owned by Lehigh. As such it is taxable against Lehigh under section 3 of the Tax Law which provides — " All real property within the state is taxable unless exempt from taxation by law."

The orders should be reversed and the petitions denied, with costs in all courts.

LOUGHRAN, Ch. J., CONWAY, DESMOND, THACHER, DYE and FULD, JJ., concur.

Orders reversed, etc.