## In re MORRIS' ESTATE.

### MORRIS v. MORRIS.

1. ESTATES—STANDING TIMBER—REALTY.

In Michigan, a conveyance of land reserving the standing timber does not make of the standing timber personalty, but it continues to be an interest in real estate.

2. SAME—ESTATES BY ENTIRETIES.

A conveyance of standing timber to a husband and wife, reserving the land, does not make of said timber personalty, but creates an estate by the entireties, the title to which will go to the survivor.

3. SAME—STANDING TIMBER—TITLE AFTER SEVERANCE.

Where standing timber is owned by a husband and wife by the entireties, the rule that the title to same vests in the survivor is applicable after it is severed from the land.

4. EXECUTORS AND ADMINISTRATORS — ALLOWANCE OF FINAL ACCOUNT.

In the final account of an administratrix of an estate, an item for services for the sale of lumber, etc., was properly allowed, where it appears that this was but a continuation of the custom of intestate in his lifetime.

Error to Kalamazoo; Weimer (George V.), J. Submitted January 14, 1920. (Docket No. 99.) Decided April 10, 1920.

Minnie Morris presented her final account as administratrix of the estate of Frank B. Morris, deceased. The account was allowed in the probate court, and Manley Morris and others appealed to the circuit court. Judgment for plaintiff. Defendants bring error. Affirmed.

*Lincoln H. Titus* (*Harry C. Howard,* of counsel), for appellants.

*Mason & Sharpe,* for appellee.

MOORE, C. J. Frank Morris died intestate, leaving a wife but no children. His heirs besides his wife are a brother, Manley Morris; his sisters, Nellie De-Val, Rose Whitmore, Clara Waling, Ellen Earl; his nieces, Maud Taylor, Nora Sherman; and his nephews, Vern Blodgett and Will Blodgett. Mrs. Morris, the plaintiff, was appointed administratrix of his estate. He left an estate of about $14,000. On or about April 23, 1918, Mrs. Morris filed her final account. The defendants filed objections to the allowance thereof, claiming that there were items of property belonging to the estate which had not been placed in the inventory nor accounted for in the final account. Objection was also made because of the claim of certain commissions paid to one George Earl for the selling of certain lumber belonging to the estate, and for expenses paid to him by the administratrix, while he was making the sales, because it is claimed that the administratrix had claimed and received commissions under the statute as administratrix for the sale of the lumber, and if George Earl was paid for what he did it constituted a double commission against the estate.

It was also claimed that the expenses charged by him and paid by the administratrix were matters which belong to her to perform in the regular course of her duties as administratrix, and if she chose to employ another to perform such services it was for her to pay out of the commissions which she received and was not a legitimate charge against the estate. Another objection to the final account concerned the claim for the amount paid attorneys for the estate. An objection also related to the claimed allowance for extra compensation to the administratrix of $250.

The probate court allowed the final account as presented, except the claim of the administratrix of $250 for extra compensation. The defendants took an ap-

peal from the decision of the probate court to the circuit court where the issues litigated were:

(1) The item concerning the title to the standing timber. This timber was a 14-acre tract of timber which had been deeded to Mr. and Mrs. Morris as husband and wife prior to his death. The deed was in due form, was properly acknowledged, witnessed and recorded. The grantor in the deed retained the fee of the land and the deed provided the trees should be cut and removed in a limited period. The timber was sold and Mrs. Morris took the money and made no account of it to the estate claiming it was hers by right of survivorship.

(2) To the title to the logs and lumber, piled upon or near land owned by Frank B. Morris and Minnie Morris, his wife, which logs and lumber were severed from the soil prior to his death.

(3) To the item for commissions and expense of George P. Earl.

(4) To the item for attorneys' fees claimed to have been rendered for the estate.

The jury, by consent of counsel, which had been impaneled was dismissed and the court entered judgment for the plaintiff affirming the order of the probate court.

1. The first proposition requiring attention is the title to the standing timber. It is the claim of the widow that she is the owner by right of survivorship of all the property described in the deed. We quote from the brief of counsel for appellant:

"It is the claim and theory of the defendants that the property described in the deed is personal property and is not subject to the law of survivorship, and that such property should be made a part of this estate and be accounted for by the administratrix.

"The question from our viewpoint presents one of law, the facts being conceded, and if the question of law is resolved in favor of Minnie Morris and her claim is substantiated that she is the owner of the property mentioned in the deed, that is, that the standing timber with title to the fee reserved to the grantor

is real estate, and she takes it by right of survivorship, that puts an end to the matter. * * *

"We have been unable to find after a careful search of the reports of this court that this question has ever been passed upon by this court. * * * The revised statutes (statute of frauds) declare that 'No interest in lands shall be created, unless by deed or convey- ance in writing.' Growing trees are an interest in land, and so long as they are annexed to the land and are neither actually or in contemplation of law severed therefrom, they cannot be sold or transferred by parol. But growing trees may be severed, in law, from the land and become personal property, without an actual severance; as where the owner of the fee in the land, by valid deed or conveyance in writing, sells the trees to a third person, or where he sells the land, reserving the trees. In both these cases the timber and trees become chattels distinct from the soil, and go to the executor; for in construction of law they are abstract- ed from the earth.

"There is a line of authorities on this proposition from the decisions of the courts of last resort, both in England and in the United States, that hold the doctrine that such property is personal property, and these decisions contain, as it seems to us, sound rea- sonings on the proposition."

Counsel then cite several authorities whicn undoubt- edly sustain their contention.

The question is not a new one, however, in this State. In *Fletcher* v. *Township of Alcona*, 72 Mich. 18, a deed had been made:

"The reservation contained in the deed from Fletch- er, Pack & Co. to Snow & Huber is as follows:

"'Reserving all pine and hemlock timber and the right of way to remove the same, and the exclusive use of all landings on streams, flowage for dams, timbers for building log road, camps, skidways, and logging railroad, across said land.'"

The pine timber on these lands was assessed as per- sonal property. The owners contested the right to assess it as personal property. In the opinion appears the following:

"The ownership of timber standing and growing on land is an interest in the land itself, and under this statute, assessable as realty. Cooley, Tax'n (2d Ed.), 366-368; *People* v. *Com'rs of Taxes,* 82 N. Y. 462.

"This assessment was placed on a part of the roll devoted entirely to the assessment of personal property, and separate from any assessment of real property. This timber standing and growing upon these lands, for the purposes of assessment and collection of taxes, was real property, and no valid charge could be created against the plaintiffs or lien acquired specifically upon the property by assessing it as personal."

In *Ward* v. *Township of Echo,* 145 Mich. 56, the principle involved in the present case was under discussion. We quote from the opinion:

"In January, 1901, steps were taken to incorporate the Detroit & Charlevoix Railroad Company to take over the railroad belonging to the estate, and a deed was made reserving and excepting all of the timber standing, lying or being on the land conveyed, with right to cut and remove the same within three years. * * *

"It is clear that under the deed to the railroad company, there was a reservation of an interest in these lands which, if not taxable to the Ward estate, would escape taxation altogether. It is also clear that, in such circumstances, the standing timber may be assessed separately from the fee and assessed as real estate. Cooley on Taxation (2d Ed.), p. 366 *et seq.; People* v. *Com'rs of Taxes,* 82 N. Y. 462; *County of Pine* v. *Tozer,* 56 Minn. 288 (57 N. W. 796)."

In *Delaney* v. *Manshum,* 146 Mich. 525, Justice GRANT, speaking for the court, said:

"No contract of sale or conveyance made by the husband without the signature of the wife will operate to deprive her of her dower. *Richmond* v. *Robinson,* 12 Mich. 193. The right of dower attaches to all the realty. Growing trees are as much a part of the realty as the soil in which they grow, the clay, stone, mineral and other valuable deposits beneath the surface. *Stout* v. *Keyes,* 2 Doug. (Mich.) 184; *Williams* v. *Hyde,* 98 Mich. 152. The widow is entitled to dower

in them all. *In re Seager's Estate,* 92 Mich. 186 (16 L. R. A. 247). This right of dower will be jealously guarded by the courts. *Bear* v. *Stahl,* 61 Mich. 203, 214.

"Whatever right the husband may have to sell and dispose of any part of the realty, trees, gravel, clay or minerals during his lifetime, while his wife's right of dower is inchoate, all rights of the vendee in such contracts cease with the death of the husband unless the wife joined in the conveyance."

In *Williams* v. *Hyde,* 98 Mich. 152, a mortgage was given on standing timber. Instead of filing the mortgage for record in the office of the register of deeds, it was filed with the township clerk. We quote from the opinion in that case:

"Erickson, after the execution of the agreement between himself and St. Clair, but before the delivery thereof, executed a mortgage to plaintiff upon the sawmill and outfit, and also upon all the standing and down timber upon the same land, and plaintiff filed the same as a chattel mortgage, and now brings replevin against defendants for the shingles so sold to them as aforesaid. No actual notice to either St. Clair or defendants is shown. In the agreement between Erickson and St. Clair the lands are described as belonging to Erickson. The shingles were cut from timber which was standing at the time the mortgage to plaintiff was given.

"The mortgage to plaintiff, so far as it relates to standing timber, was a mortgage of an interest in real estate (*Russell* v. *Myers,* 32 Mich. 522), and the filing thereof in the clerk's office was notice to no one (*Booth* v. *Oliver,* 67 Mich. 664)."

In *Dunn* v. *Papenfus,* 202 Mich. 131, the question arose as to whether a proper notice had been given as required by statute. In that case many years before the litigation therein arose, a deed had been made reserving the pine and hemlock timber. In disposing of the case it was said in part:

"A more serious proposition is presented by the last point raised. We have held that standing timber

constitutes an interest in the land. *Wait* v. *Baldwin,* 60 Mich. 622. The statute (section 4138, 1 Comp. Laws 1915) provides that service must be made:

" 'Upon the person or persons appearing by the records in the office of the register of deeds of said county to be the last grantee or grantees in the regular chain of title of such lands, or of any interest therein.'

"In *Hansen* v. *Hall*, 167 Mich. 7, it was held that the owner of a reservation of. mineral. rights was entitled to notice and it was. there said:

" 'Until this notice is duly served upon each part owner and the statutory proof thereof is made and filed, the right to redemption remains to all,—citing *White* v. *Shaw*, 150 Mich. 270, and *Dolph* v. *Norton*, 158 Mich. 417.'

"See, also, *G. F. Sanborn Co.* v. *Richter*, 176 Mich. 562.

"In the case at bar it is conceded that there is standing pine upon the land in question. True, under the testimony its value is small, and at the time plaintiff obtained his conveyance it was not merchantable in character. These facts, however, should not, in our opinion be permitted to disturb the principle involved. The tax title purchaser may readily satisfy himself from an inspection of the records who the person or persons are who are the last grantees of such lands or of any interest therein. According to the statute the notice must be served upon all such."

The conclusion to be reached by a consideration of these cases is that in Michigan a conveyance of land reserving the standing timber does not make of the standing timber personalty, but it continues to be such an interest in real estate that it will go to the survivor where the grantees in the deed conveying the timber are husband and wife. We again quote from the brief of counsel:

"Having thus demonstrated by argument and citation of authorities that the standing timber was and is personal property, we come to the question, To whom did it belong at the time of the delivery of the deed, and consequently at the death of Frank B. Mor-

ris?    The only guides by way of adjudicated cases
that we are able to find, where our Supreme Court
have mentioned the matter are the cases of *Wait* v.
*Bovee,* 35 Mich. 425."

Counsel cite several Michigan cases including *City
of Detroit* v. *Jacobs,* 145 Mich. 395, 396; *Hart* v. *Hart,*
201 Mich. 207, and *Ludwig* v. *Bruner,* 203 Mich. 556,
and argue that joint tenancy in personal property with
its right of survivorship does not exist in this State.

We think counsel overlook the important fact that
the title to the standing timber in the instant case
came to Mr. and Mrs. Morris before it was severed
from the land and while it was, as we have already
shown, under the decisions in this State, an interest
in real estate and not personal property.

In 13 R. C. L., at p. 1114, it is said:

"In case of a joint tenancy the cotenants are deemed
seized *per my et per tout;* in this respect a tenancy
by the entireties differed; in such a tenancy the hus-
band and wife were deemed seized *per tout,* but not
*per my,* each being the owner of the whole but not of
the half or undivided share.    As has been said the
parties do not hold by moieties, but take as one per-
son, taking as a corporation would take."

On page 1120 of the same authority it is said:

"Loss of Right of Survivorship.—In case of an ordi-
nary joint tenancy one cotenant by a conveyance of
his undivided share may defeat the right of survivor-
ship in the other, because such a conveyance operates
as a dissolution of the joint tenancy and the creation,
as between the grantee and the other cotenant, of a
tenancy in common.    The rule is different, however,
in case of a tenancy by entireties and a conveyance by
the husband will not affect the wife's right of sur-
vivorship; and this is true though the conveyance is
with the consent of the wife, and even the fact that
she joined in the conveyance will not defeat her right,
if her acknowledgment was not sufficient to render the
conveyance operative against her.    Since a husband
cannot by any conveyance on his part, affect the wife's

right as survivor, *a fortiori* on his death his creditors have no claim, even in equity as against the wife's title as survivor, and no interest of the husband survives his death which can be subjected to the payment of his debts."

In *Dickey* v. *Converse*, 117 Mich. 449, the question arose as to whether the creditors of the husband could levy upon crops grown upon land owned by the husband and wife as tenants by the entirety. In that case there is a collation of many authorities upon the subject. In the opinion it is said in part:

"It is claimed the holding of plaintiffs is that of tenants by entirety, and that the husband is entitled to the full control of the rents and profits of the land during the joint lives, to the exclusion of the wife, and that the crops grown would be subject to the claims of creditors. A good many cases are cited in support of this proposition, but these cases are not in accord with the holdings of this court as will hereafter be shown. * * *

"This species of tenancy grows out of the unity of husband and wife, and is unlike that of joint tenants, who are each seized of an undivided moiety. The husband and wife are each seized of the whole, and not of undivided moieties. *Hardenbergh* v. *Hardenbergh,* 18 Am. Dec. 378 (10 N. J. Law, 42), note.

"What is the purpose of the use of a farm? Is it not a place to live upon? To grow crops for consumption and sale? If neither the husband nor the wife has an undivided moiety of the use of the farm, how can it be said each of them has an undivided interest or moiety in the result of that use? To hold that the husband is not entitled to an undivided moiety of the use of the farm, but is entitled to an undivided half of the results of that use, is, we think, illogical. While the precise question involved here has not been decided by this court, it has been before the supreme court of Indiana in *Patten* v. *Rankin,* 68 Ind. 245 (34 Am. Rep. 254), where it was held that 'a crop raised on land held by a husband and wife by entireties is held by them in the same manner and subject to the same law as the land itself, and such crop is therefore not sub-

ject to levy and sale on an execution against the husband.' "

If crops grown upon the land are subject to the same law as the land itself we think it follows that this is true of the timber growing on the land, even after it is severed from the land.

We now come to the items paid to 'Mr. Earl for his services. We have already stated the claim of the appellants in relation to these items. The record shows that in his lifetime Mr. Morris employed Mr. Earl to do like work for him, and paid him for it. It was work that must be done before the lumber and other products from the timber could be converted into money. We can see no impropriety in Mrs. Morris, as administratrix, paying for this work and being allowed therefor.

We again quote from appellants' brief:

"As to the charges for attorney fees, under the rule laid down by this court in *Re McNamara's Estate,* 166 Mich. 451, 452, we are not satisfied that the trial court was not in error in holding that it was a matter for the court and not for the jury to pass view upon, and in view of the fact that there was some evidence to support the finding of the trial court upon this item, under the familiar rule of this court, that where there is any evidence to support the findings of a trial court, such findings will not be disturbed, we are compelled to be content."

The other contested items are small; they have had our consideration though we will not discuss them. We find no reversible error.

The judgment is affirmed, with costs to the plaintiff.

STEERE, BROOKE, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred. SHARPE, J., did not sit.