**BATTJES v. UNITED STATES.**

No. 10658.

United States Court of Appeals
Sixth Circuit.

Feb. 3, 1949.

Wm. Henry Gallagher, of Detroit, Mich., for appellant.

Meyer Rothwacks, of Washington, D.C., and Francis X. Norris, of Detroit, Mich. (Theron Lamar Caudle, Ellis N. Slack, Turner L. Smith and Meyer Rothwacks, all of Washington, D.C., and Thomas P. Thornton and Francis X. Norris, both of Detroit, Mich., on the brief), for appellee.

Before ALLEN, MARTIN, and MIL- LER, Circuit Judges.

MILLER, Circuit Judge.

The appellant was indicted for willfully attempting to evade income taxes due and owing for the calendar year 1941. Section 145(b), Internal Revenue Code, 26 U.S.C.A. § 145(b). A jury was waived and the case was tried to the court. The District Judge found the appellant guilty and imposed a sentence of a $10,000 fine, from which judgment the appellant has appealed.

At the time in question, the appellant Battjes was in the gravel business under the trade name of Battle Creek Gravel Company. Its principal business was the producing and selling of processed (i.e., washed and graded) gravel. In July 1941, Harry Pickitt obtained a subcontract from the Detroit Asphalt Paving Company to produce the materials necessary to build runways for an air field near the property of the Battle Creek Gravel Company. He entered into an agreement with Battjes under which Battjes was to furnish the raw gravel needed for this job. They agreed upon the place on the Company's property from which this gravel in its natural shape would be taken. This was on the Company's land but "down the road" from the gravel plant itself. Pickitt took out the gravel in his own trucks with no record being kept by the Company of the amounts so taken. No invoices were rendered by the Company and Pickitt made payments based on his own records as he was paid by the contractor. Pickitt began withdrawing the gravel in 1941 and continued to do so into 1942. He made payments totaling $10,704.50 in 1941 which did not pay in full for the gravel taken during that year. In the spring of 1942 he paid something over $5,000 additional for gravel taken in 1941. While this arrangement was in effect, Pickitt found that he needed processed gravel to mix with the raw gravel to meet the specifications. In purchasing this processed gravel from the Battle Creek Gravel Company he received regular invoices from the Company which kept the usual records on such company transactions.

The sale of the raw gravel to Pickitt was handled differently from the sales of processed gravel. Battjes told his general manager that Pickitt was coming in after some raw gravel and showed him the place on the property from which it would be taken. He directed him to forward checks received in payment for this gravel to his home in Grand Rapids. The sales of raw gravel were not recorded in the records of the Company for the reason given by the general manager that it "was a deal outside of the washed gravel plant." Some small sales of raw gravel were handled in the same way as sales of processed gravel and were reflected on the Company's books. But following Battjes' instructions large orders for raw gravel were not put through the books.

The total payments of $10,704.50 made by Pickitt during 1941 were through the following checks issued to the Battle Creek Gravel Company: October 1, 1941 for $2,550.50, November 8, 1941 for $5,000, November 22, 1941 for $2,500 and December 8, 1941 for $654. The checks for $2,550.50 and for $5,000 were endorsed by

Battjes and deposited to his account with a brokerage house, with which he had maintained a substantial account for several years. The checks for $2,500 and $654 were endorsed by Battjes and deposited to a personal account in the name of Battjes and his wife at the Old Kent Bank in Grand Rapids, Michigan. In making such deposits at the bank the teller, in accordance with an existing arrangement previously made by Battjes with the bank, wrote in the deposit book the name of the maker of the checks so deposited. These transactions with Pickitt and the payments from him were not reflected in appellant's 1941 return.

In the spring of 1941, the Michigan State Highway Department brought a condemnation proceeding to acquire a strip of land from the Company's gravel pit, after being unable to agree on the sale price. The case was settled before trial under an agreement by which the State was to pay $15,500 for the land, the expense of moving a house located on the land, and $100 additional to the tenant for moving promptly from the house. In September 1941, Battjes and his wife received a State warrant for the $15,500, which Battjes deposited with the stock brokerage firm. No reference was made to this transaction or the receipt of this money in the 1941 return. An additional payment of $100 was made to Battjes by the State of Michigan in September 1943 for "damages and expense incurred in the removal of tenants" from the house located on the property so taken. The Government did not learn about the transaction until after March 15, 1943. It contends it was a capital gain transaction which should have been reported in the 1941 return.

In August 1942, the Government began investigating the 1940 and 1941 returns of the Battle Creek Gravel Company with reference to certain items of depletion and depreciation. It examined the records of the Company at the office of Mr. Neumann, who was the accountant who kept the books on the basis of information sent him by the general manager. Additional information, including information as to salaries, dividends and other deductions, was requested and furnished by Battjes. The agent talked with Battjes in the accountant's office in October with respect to such items and submitted his report on the 1940 and 1941 returns in November of 1942.

In February 1943, a revenue agent again interviewed Battjes following an investigation of the Grand Rapids Gravel Corporation's return, of which Battjes was a vice president. The matters discussed were income listed as oil royalties by Battjes in his personal return for 1941 which the Government contended were dividends from the Grand Rapids Gravel Corporation, and a bad debt deduction taken by that corporation in 1936, which the Government claimed was wholly fictitious.

On March 30, 1943, a Government agent, after receiving information about the payment from the State of Michigan, wrote Battjes requesting information about the real estate transaction. On April 2, 1943, Battjes telephoned the agent that his accountants Seidman and Seidman would give him the information requested. This was not the accountant who kept the Company's books, but was an accounting firm first contacted by Battjes on March 12, 1943 to assist in preparing the 1942 return of himself and his family. On April 12, 1943, he gave the accountants the information about the transaction with the State of Michigan and about the payments received from Pickitt stating that the payments received from Pickitt were inadvertently overlooked and not reported in his 1941 return. He asked the accountants to convey the information to the revenue agent which they promptly did. Battjes himself did not confer with the agent until May 1943. On June 16, 1943, following conferences, Battjes signed a statement concerning these transactions. In this statement he stated that he and his wife felt that the land taken by the State of Michigan belonged to them and not to the Gravel Company, and that it was not reported in his 1941 or 1942 income tax returns because he considered the deal unfinished until he received the final check for $100 from the State. This statement gave no specific reason for not

reporting the Pickitt payments in the 1941 return, except the general statement that it was his intention to report all income from whatever sources received, "and the items were left unreported either through negligence on my part, or because I thought that the transactions involved had not been completed, and I intended to report the income when all of it had been received by me."

Prior to furnishing the information requested, Battjes had two meetings with revenue agent Hayes in connection with the return of the Grand Rapids Gravel Corporation, but on neither occasion did he mention the items excluded from his 1941 personal return. Between August 1942 and April 1943, revenue agent Banach wrote Battjes at least six letters concerning the examination of his 1940 and 1941 returns, but until he received the information from the accountants in April 1943 he had no information about unreported income from gravel sales. However, during the May 1943 conference Battjes produced the work sheets he had used in preparing his 1941 return which showed references to the Pickitt transaction. Revenue agent Banach testified that on the occasion of each inquiry and request for information by the Government Battjes furnished the information and facts requested of him. On April 2, 1947, Battjes filed an amended individual income tax return for the year 1941 which included the payments received in the transactions with Pickitt and the State of Michigan, charging one-half to himself and one-half to his wife.

■ The indictment charges the willful attempt to evade income taxes for the calendar year 1941 by failing to include in gross income "Additional profit from sales of top dirt and gravel * * * $10,704.50." It does not refer to the money received from the State of Michigan and evidence as to that transaction was admissible only as a transaction or conduct of a similar nature which would bear on the issue of intent. Schmeller v. United States, 6 Cir., 143 F.2d 544, 551.

■ Appellant contends that the District Judge erred in basing his findings of guilt upon the presumption that appellant was presumed to know the law. In discussing the question the District Judge said—"It may be a little unfair, but a taxpayer is presumed to know the law, even though the tax attorneys may not know it, and he must be presumed to have known that he had to report all of the tax or all of the cash that he received, unless there was some exception." And a little later—"I am willing to agree with you there are certain circumstances under which ignorance of the law should be sufficient to justify a verdict of acquittal, but in this instance, as he said, he assumed responsibility for making his own return, complicated as you say." We agree with appellant that there is a distinction between an erroneous tax return and one which is fraudulent, and that an actual bona fide misconception of the law, regardless of the presumption that the taxpayer knows the law, will not result in criminal liability under the statute referred to. Under that statute a willful purpose to evade the tax is necessary. But we are of the opinion that the statements of the trial judge above referred to, considered apart from the context in which they were made, give a false impression of the District Judge's views. During the testimony of revenue agent Hayes the District Judge stated that he had no quarrel with the proposition that it was necesary "to show the intent or willfulness of this man." In his final summary of the case before making the finding of guilty, the District Judge referred to the issue of "determining whether these discrepancies were willful" and stated that under the evidence he would have to "conclude that he willfully attempted to evade the payment of the tax." He later repeated, "I am satisfied that he knowingly violated the law." Considering the statements of the District Judge in their entirety, we do not believe that his finding of guilty was predicated on the presumption that the appellant was presumed to know the law, but included a finding of willfulness as required by the statute.

■ Appellant contends that the Government did not sustain the burden of proving beyond a reasonable doubt that

the appellant willfully attempted to evade income taxes for the year 1941, and that the finding of the trial judge is contrary to the great weight of the evidence. This Court in reviewing a judgment for the purpose of determining whether the evidence was sufficient to support the conviction must take that view of the evidence with inferences reasonably and justifiably to be drawn therefrom, most favorable to the government, and determine therefrom whether the finding was supported by substantial and competent evidence, and where there is substantial and competent evidence, which if believed, supports the conviction, the appellate court can not weigh the evidence or determine the credibility of witnesses. Zottarelli v. United States, 6 Cir., 20 F.2d 795; Meyers v. United States, 6 Cir., 94 F.2d 433; United States v. Manton, 2 Cir., 107 F.2d 834, 839; Murray v. United States, 8 Cir., 117 F.2d 40, 44. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. N.L.R.B. v. Columbian Enameling and Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 83 L.Ed. 660. Direct proof of willful intent is not necessary. It may be inferred from the acts of the parties, and such inference may arise from a combination of acts, although each act standing by itself may seem unimportant. It is a question of fact to be determined from all the circumstances. Wuichet v. United States, 6 Cir., 8 F.2d 561; Aiken v. United States, 4 Cir., 108 F.2d 182; Tinkoff v. United States, 7 Cir., 86 F.2d 868, 879; Gates v. United States, 10 Cir., 122 F.2d 571, 575, certiorari denied 314 U. S. 698, 62 S.Ct. 478, 86 L.Ed. 558.

■ Taking that view of the evidence, with inferences reasonably and justifiably to be drawn therefrom, which is most favorable to the Government, we are of the opinion that there was substantial evidence to support the finding of guilty. It is undisputed that Battjes received $10,704.50 from Pickitt during 1941 which he did not include in the gross income reported for that year. Nor was any reference made in the return to the transaction. There was evidence that Battjes instructed his manager not to send information concern-

ing substantial raw gravel transactions to the accountant. These transactions were not recorded in the books of the Company, although small raw gravel transactions were recorded. The checks in payment were sent to Battjes personally and not reflected as income to the Company. Two of them were cleared through a brokerage account instead of Battjes' regular banking account. Although this course of conduct might be consistent with appellant's present contention that he considered it a capital gains transaction, outside of the business of the Company and not completed until the following year, yet that was not the contention made by Battjes at the time the revenue agent reopened the investigation about April 1943. At that time he stated to the accountants that the payments were inadvertently overlooked. However, his work sheets which were later produced showed them to be listed. During the first examination of his 1941 return, between August and November of 1942, no reference whatsoever was made by Battjes to this transaction, and the facts concerning it were not given to the agent until Battjes learned that a new investigation was under way with respect to his real estate transaction with the State of Michigan. His failure to report the payment received in 1941 from the State of Michigan, together with the failure to refer to it in his return, or to bring it to the attention of the revenue agents with an appropriate explanation for not including it in the 1941 return, was properly before the Court on the issue of willful intent. In Spies v. United States, 317 U.S. 492, at page 499, 63 S.Ct. 364, 368, 87 L.Ed. 418, it was stated that "affirmative willful attempt may be inferred from conduct such as * * * handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal." The actual effect of Battjes' conduct was to conceal. Although there was evidence tending to show good faith on the part of Battjes which might refute the inference of willful intent, which evidence was *properly urged upon* the trial judge, it was apparently not considered by the trial judge as sufficient to overthrow the inference of willfulness

found by him from all of the facts in the case. At this stage of the case, we do not weigh such conflict in the evidence.

 Appellant also contends that the sale of raw gravel to Pickitt was the sale of a capital asset which was not a completed transaction until after the receipt of the final payment in 1942, with the result that the profit realized therefrom was not includible in his income tax return for 1941. Compare Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010. He urges upon us the rule that ore, coal or gravel in place is a part of the realty. Palms v. Palms, 68 Mich. 355, 371 through 372, 36 N.W. 419; In re Morris' Estate, 210 Mich. 36, 42, 177 N.W. 266; Butler Consolidated Coal Co. v. Commissioner, 6 T.C. 183, 189. Under the facts of this case, we do not construe the sale of raw gravel to Pickitt as a sale of gravel in place. The raw gravel was sold from the same tract of land from which the processed gravel was taken and washed and graded. It was not sold in bulk but was paid for by the cubic yard as taken. Nor was it a sale of all the gravel in place under a described surface area which would remain in place with title in the purchaser. Rather it was the sale of only a part of the gravel in that locality looking to its extraction from the realty. Although the principal business of the Company was the sale of processed gravel, yet there was evidence that raw gravel such as was sold to Pickitt was also sold to other contractors. Under § 117(a) (1) of the Internal Revenue Code, 26 U.S.C.A. § 117(a) (1), the term "capital assets" does not include stock in trade of the taxpayer "or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in § 23(l), * * *." The raw gravel so sold seems to fall clearly within the exclusion from capital assets as so defined. Jacob S. Gruver v. Commissioner, 1 T.C. 1204, affirmed 4 Cir., 142 F.2d 363; Reis v. Commissioner, 6 Cir., 142 F.2d 900, 903. Since it was not a capital transaction, the payments received from Pickitt were ordinary income for the year in which received and properly includible in appellant's 1941 income tax return.

The judgment of the District Court is affirmed.