THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ANDRÉS FRANCESCHI, Defendant and Appellant.

No. 15288.  Argued November 17, 1952.—Decided May 5, 1953.

---

*Jorge L. Córdova* for appellant. *J. Rivera Barreras, Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

The prosecuting attorney accused Dr. Andrés Franceschi of a violation of § 77 of the Income Tax Act (Act No. 74 of 1925, Sess. Laws, p. 400). The information filed recites in substance:

"On or about March 16, 1947 . . . the aforesaid defendant . . . unlawfully and willfully and knowingly attempted to evade and defeat a large amount of the income tax corresponding to the calendar taxable year that ended December 31, 1946 . . . which tax was due and owing by the defendant to The People of Puerto Rico. The said attempt consisted in presentation by the defendant of a false and fraudulent income tax return to the Treasurer of Puerto Rico on March 16, 1947, in which return the defendant declared that his gross income during the aforesaid taxable year amounted to twenty-four thousand nine hun-

dred and sixty dollars ($24,960) knowing that his true gross income during that period amounted to fifty-seven thousand five hundred and twenty-seven dollars and thirty cents ($57,527.30) or more; that his net income amounted to seven thousand nine hundred and ninety-eight dollars ($7,998) knowing that his true net income for said taxable year amounted to forty thousand five hundred and sixty-five dollars and thirty cents ($40,565. 30) or more; and that the amount he owed as income tax for the aforesaid taxable year 1946 amounted to eight hundred and forty-three dollars and sixty-two cents ($843.62) the defendant knowing that the income tax due and owing by him to the People of Puerto Rico for the aforesaid taxable year amounted to fourteen thousand six hundred and eighty dollars and eighty-three cents ($14,680.83) or more."

The parties offered abundant oral and documentary evidence at the trial and at the termination thereof the court *a quo* found the defendant guilty and sentenced him to pay a $1,000 fine and in default thereof to serve 90 days in jail, plus the costs. The court *a quo* stated in its judgment that it had found satisfactorily proved that the defendant had declared in his return the amount of $24,960 as income during 1946; that the parties stipulated that the defendant had received income, which had not been declared, in the amount of $26,331, of which sum $4,639 had to be deducted as income shown in his books; that it was further stipulated that the defendant had other income amounting to $1,355 and that other witnesses would testify that in addition he had received $466; that the Cruz Azul paid him $300, the Office of the Auditor of Puerto Rico $497.01; and a lady whose last name was Cestero $50, which totals $49,066.01 (*sic*); that accepting the deductions claimed by the taxpayer, in the amount of $16,962, there remained a net income of $32,104.01; that if $2,400 were deducted from that sum as credit allowed to the defendant because he was the head of a family and had dependents, he still had a taxable net income amounting to $29,704.01; and that of that taxable net income the defendant declared in his return $5,598 and paid a tax of $843.62.

The trial judge goes on to say that:

"The mere fact of filing a return understating the actual income does not by itself constitute the offense, but if there are circumstances, as there are in this case, which the court considers sufficiently proved and induce the court to believe that the defendant knew that he was filing a return understating his income during that taxable year, and the defendant was able to find out prior to filing the return, as was proved in this case, such circumstances, which are present in this case, must independently make the court reach the conclusion that there has been a violation of § 77 of the Income Tax Act as said Act was in force when the offense was allegedly committed, that is, as amended by the Act of 1941 . . .".[1]

Feeling aggrieved by the judgment rendered against him, the defendant appealed. He now claims that the trial court erred (1) in determining that his gross income for 1946 amounted to $49,066.01, his taxable net income to $29,704.01 and the income tax owed to $10,007.04; and in not determining that his gross income, net income and tax were not substantially higher than the amounts of $24,960, $5,598 and $843.62 and that, therefore, if he committed any error, no intent to defraud was shown; as well as (2) in deciding that the offense charged was not barred when the information was filed. We shall discuss these assignments inversely, inasmuch as if the latter one prospers, discussion of the former would be unnecessary.

The defendant filed the return for the natural taxable year of 1946 in the Income Tax Bureau of the Treasury Department on March 16, 1947. (The parties accept that that is the starting point of the statute of limitations.) The prosecuting attorney filed the information on March 10,

[1] Section 77 of the Income Tax Act, as amended by Act No. 31 of 1941 (Sess. Laws, pp. 478, 536) insofar as pertinent reads:

"*Any person who illegally and wilfully (a) aids* or assists in the preparation, *or presents* or assists in the presentation of *a false or fraudulent return* . . . shall . . . be guilty of a felony and, upon conviction thereof, be punished by a fine of not more than ten thousand (10,000) dollars, or by imprisonment for not less than one (1) year, or by both penalties, together with costs of prosecution . . .". (Italics ours.)

1950, that is, only six days before the expiration of three years from the filing of the return. Was the offense barred when the information was presented? We must answer in the negative.

Although § 77 of the Income Tax Act provides that any person violating it "shall . . . be guilty of a felony and, upon conviction thereof, be punished by a fine of not more than ten thousand (10,000) dollars, or by imprisonment for not less than one year, or by both penalties . . .", in an order rendered by this Court on August 4, 1950, in certiorari 1864, entitled *Andrés Franceschi* v. *District Court of Puerto Rico, San Juan Section*, we concluded that the court *a quo* had erred in considering the offense as a felony instead of as a misdemeanor. Section 79 of the Penal Code provides that:

"The prosecution for any misdemeanor must be commenced within one year after its commission, *except in cases of violation of the Internal-Revenue Laws, when prosecution may be commenced within three years after their commission.*" (Italics ours.)

The defendant's contention in this connection is that the phrase "Internal-Revenue Laws" rather refers to the Act known by that specific name and not to Acts which levy income, inheritance or property taxes. We do not agree.

It is true that in Puerto Rico there is an Act specifically known by the name of "Internal Revenue Law of Puerto Rico." It is Act No. 85 of August 20, 1925 (Sess. Laws, p. 584). This does not mean, however, that other laws by virtue of which our government levies taxes, as for example Act No. 74 of 1925 regarding income; Act No. 99 of that same year regarding "Inheritance Taxes" and those levying taxes on real and personal property, are not internal revenue laws also. Section 77 of the Income Tax Act, as it read on April 28, 1933, on which date Act No. 30 of that year (Sess. Laws, p. 252) amended § 79 of the Penal Code as above copied, recited, insofar as pertinent:

"(*a*) Any person who illegally and wilfully (1) aids or assists in the preparation or presentation of a *false or fraudulent return*, affidavit, claim or document *authorized or required by the internal revenue laws* . . . ."[2]   (Italics ours.)

Hence, when § 79 of the Penal Code was amended, § 77 of the Income Tax Act, spoke clearly, emphatically and specifically of "a false or fraudulent return, . . . or document authorized or required *by the internal revenue laws.*" (Italics ours.)   Moreover, the very Income Tax Act, *supra*, is entitled "An Act to provide *Revenues* for The People of Porto Rico through the levying of certain income taxes, and for other purposes."   It may be gathered therefrom that at that time the lawmaker considered that the return to be filed under the Income Tax Act was required "by the internal revenue laws."   Consequently, since the Act amending § 79 of the Penal Code provides that the prosecution for any misdemeanor prescribes after one year '*except in cases of violation of the Internal-Revenue Laws, when prosecution may be commenced within three years after their commission,*" (Italics ours) it is to be presumed that the lawmaker had in mind the provisions of the aforesaid Income Tax Act referred to and, therefore, that his intention was that violations of that Act, notwithstanding that they were misdemeanors, would prescribe three years after committed.

■ As Sutherland says in his Statutory Construction, 3d ed., Vol. 2, p. 508, § 5101, "Among the extrinsic aids of statutory construction are those which are gathered from circumstances existing or occurring at or after the statute goes

---

[2] Section 77 as amended by Act No. 2 of May 25, 1939 (Spec. Sess. Laws, p. 4) provides that:

"*Any person who illegally and wilfully (a) aids* or assists in the preparation, *or presents* or assists in the presentation of a *false or fraudulent return* . . . or document authorized or required by this Act *or by the internal revenue laws*, . . . ."   (Italics ours.)

The amendments introduced into that Section by Acts No. 31 of 1941 (Sess. Laws, pp. 478, 536) and No. 2 of March 14, 1949 (Sess. Laws, pp. 2, 4) read, as to the point here under discussion exactly as they read after the 1939 amendment.

into effect. As a general rule it may be stated that legislative intent should be determined as of the time the legislation goes into effect." Following the principle thus laid down, it is only logical to conclude that as the lawmaker knew that since 1925 the Income Tax Act had been characterized as an internal revenue Act, in amending § 79 of the Penal Code in 1933 as above indicated, he intended to have violations of that Act, punishable as misdemeanors, prescribe three years after their commission.

▮ On the other hand, in a case wherein the question involved was whether certain merchandise purchased by Ballester Hermanos in Argentina, which arrived at San Juan harbor on an Argentine vessel on January 13, 1943, and which custom authorities did not release for unloading until the 18th or 20th of that same month, was subject to the payment of property taxes, the U. S. Court of Appeals for the First Circuit said, through Mr. Justice Woodbury:

"But the words *'internal-revenue taxes'* do not describe a narrow category of taxes. They are used to describe any tax which a government may impose except duties on imports. That is to say, *they are used to describe all taxes in general derived from internal sources* as contrasted with taxes derived from external sources." (Italics ours.) *Buscaglia* v. *Ballester,* 162 F. 2d 805, cert. denied 332 U. S. 816.

Applying that reasoning we could likewise conclude that the taxes levied by the Income Tax Act are internal revenue taxes. The offense was not barred.

▮ When discussing the first assignment of error, the defendant maintains that "in accordance with the Income Tax Act of Puerto Rico, Andrés Franceschi was not allowed to include in his 1946 return that portion of the income of the conjugal partnership belonging to his ex-wife Kirstine Smith, that his duty was to declare one half of the conjugal gross income obtained in 1946, plus his private income, and that he could deduct one half of the expenses of the conjugal partnership and his total private expenses; that

there is no evidence to the effect that he deducted a single cent in excess of what he was entitled to deduct; and that if there is evidence that his gross income exceeded $24,960, which amount he declared, the difference is so slight that it does not warrant the conclusion that there had been a criminal intent." [3]

Although in the individual income tax return filed for 1946 the defendant answered "no" to question number 4 on the first page thereof asking "Were you married and living with your wife or husband on the last day of your taxable year?"; although in answer to question number 6 of the aforesaid individual income tax return the defendant stated that his status had changed in September 1946; although he offered in evidence a certified copy of the judgment of divorce entered against him on September 6, 1946; and although one of the witnesses presented by the defendant said that the latter was divorced, however, he did not allege during the trial in the court *a quo* that the return filed had been filed in accordance with §§ 18 and 24 of the Income Tax Act, that is, as a married person not living with his wife, and divorced during the taxable year.

---

[3] Section 18 of the Income Tax Act, as amended by Act No. 31 of 1941 (Sess. Laws, pp. 478, 506) essentially provides that:

"For the purpose of the normal tax, there shall be allowed only the following credits:

"(*a*) .................................................

"(*b*) In the case of an unmarried person, a personal exemption of $800; or in the case of the head of a family or *a married person living with husband or wife, a personal exemption of $2,000.* A husband and wife living together shall receive but one personal exemption. The amount of such personal exemption shall be $2,000.

" .................................................

"(2) The credit allowed by subdivision (*b*) of the section shall in case the civil status of the taxpayer changes during his taxable year, be the sum of (A) an amount which bears the same ratio to $800 as the number of months during which the taxpayer was unmarried bears to 12 months, plus (B) an amount which bears the same ratio to $2,000 as the number of months during which the taxpayer was a married person living with husband or wife, or was the head of a family, bears to 12 months. For the purposes of this paragraph a fractional part of a month shall be

Be that as it may, that is not the question before us. The true question with which we are now concerned is whether the defendant "unlawfully and willfully and knowingly attempted to evade and defeat a large amount of the income tax corresponding to the natural taxable year that ended December 31, 1946." After carefully reading the evidence offered by the parties, both oral and documentary, as well as the exhibits sent up, some of them copies, others in their original form, we are convinced that that was what really happened. In his return he stated that his gross income was $24,960. Nevertheless, the parties stipulated during the trial that if 284 witnesses testified they would testify that they had paid to Dr. Franceschi for services during childbirth, operations and visits the amount of $26,331 and that the defendant accepted having received that money, as well as that his books showed only $4,693 thereof. It was also stipulated that if 14 witnesses testified they would say that they had paid to the defendant $1,545 of which amount his books showed only $190; that the defendant had received $300 from the Cruz

---

disregarded unless it amounts to more than half a month, in which case it shall be considered as a month." (Italics ours.)

See also § 180 of the Regulations No. 1 to implement the Income Tax Act.

Section 24 of the Income Tax Act, as amended by Act No. 31, *supra,* reads:

"(*a*) The following individuals shall each make under oath a return stating specifically the items of his gross income and the deductions and credits allowed under this title.

"(1) Every individual having a net income for the taxable year of $800 or over if unmarried, or *if married and not living with husband or wife.*

"(2) Every individual having a net income for the taxable year of $2,000 or over, *if married and living with husband or wife;* and

"(3) Every individual having a gross income for the taxable year of $5,000, or over, regardless of the amount of his net income.

"(*b*) If a husband and wife *living together* have a net income for the taxable year of $2,000, or over, or an aggregate gross income for such year of $5,000 or over, the total income of both shall be included in a single joint return, and the normal and additional tax shall be computed on the aggregate income. The net or gross income received by anyone of the spouses shall not be divided between them." (Italics ours.)

Azul and entered in his books the amount of $3 only; that from the Office of the Auditor he received $247.01 and that said amount did not appear in his books. The parties likewise stipulated that the amount of $21,638 paid to Dr. Franceschi by several patients did not appear in the doctor's books. However, the defendant offered no evidence to controvert those stipulations, and gave no satisfactory explanation of his actions. The court *a quo* weighed the entire evidence before it and arrived at the conclusion we have mentioned. Thus, the defendant not only failed to enter in his books innumerable sums of money received from his patients, but also understated in his books certain amounts actually received by him. His intention to evade and defeat the tax was clearly established thereby.

In *Spies* v. *United States*, 317 U. S. 492, 87 L. Ed. 418, which is classic in connection with this subject, Spies was convicted of attempting to evade and defeat the Income Tax Act, in violation of § 145 (*b*) of the Federal Revenue Act of 1936, 49 Stat. 1648, 1703.[4] In its opinion the U. S. Supreme Court stated:

"The United States has relied for the collection of its income tax largely upon the taxpayer's own disclosures rather than upon a system of withholding the tax from him by those from whom income may be received. This system can function successfully only if those within and near taxable income keep and render true accounts. In many ways, taxpayers' neglect or deceit may prejudice the orderly and punctual administration of the system as well as the revenues themselves. Congress has

---

[4] Section 145 (*b*) of the Federal Revenue Act provides:

"Any person required under this title to collect, account for, and pay over any tax imposed by this title, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

imposed a variety of sanctions for the protection of the system and the revenues.

"..............................................................

*"It is not the purpose of the law to penalize frank difference of opinion or innocent errors made despite the exercise of reasonable care.* Such errors are corrected by the assessment of the deficiency of tax and its collection with interest for the delay ...

"..............................................................

"By way of illustration, and not by way of limitation, we would think *affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal. If the tax-evasion motive plays any part in such conduct the offense may be made out* even though the conduct may also serve other purposes such as concealment of other crime." (Italics ours.)

The case of *Gaunt* v. *United States*, 184 F. 2d 284, 290, also involves a violation of § 145(*b*) of the Federal Revenue Act. In deciding it, the U. S. Court of Appeals for the First Circuit stated:

"Wilfulness is, of course, a question of fact. But direct proof thereof is not essential. It may be inferred from acts and circumstances, and the inference may be drawn from a combination of acts and circumstances, although each separate act and circumstance standing alone is inconclusive. (Citation.) Moreover, in cases of this sort 'affirmative willful attempt may be inferred from . . . any conduct, the likely effect of which would be to mislead or to conceal.' (Citation.) Thus mere *understatements of income by the defendant are not by any means the sole criterion of determining the wilfulness of his alleged attempts to evade or defeat his taxes. His understatements of income must be viewed in their setting . . . .*" (Italics ours.)

Direct proof of willful intent to evade or defeat a tax is not necessary. Such intention may be inferred from the acts of the taxpayer, and such inference may arise from all

the acts of the taxpayer, although each act standing by itself may be unimportant. The intention to evade or defeat a tax is a question of fact to be determined from all the attendant circumstances. *Battjes* v. *United States*, 172 F. 2d 1, 5.

■ It cannot be gainsaid that the People did not prove the exact amounts alleged in the information. That, however, lacks importance. *United States* v. *Johnson*, 319 U. S. 503, 517, in which it was also said that: "To require more or more meticulous proof than this record discloses . . . would be tantamount to holding that skilful concealment is an invincible barrier to proof." See also *Stinnett* v. *United States*, 173 F. 2d 129, 130 and *Cave* v. *United States*, 159 F. 2d 464. The making and filing of a fraudulent return is the most common and most flagrant method of willfully attempting to evade and defeat an income tax. *Rick* v. *United States*, 161 F. 2d 897.

■■ This is not a case, as we have seen, of a divergence or discrepancy of opinion as to how the ·defendant should have filed his return. Should there merely exist such discrepancy or divergence, there would be no offense. *Spies* v. *United States, supra;* Mertens, Law of Federal Income Taxation, Vol. 10, § 55.15, p. 27. Here, we repeat, the gist of the offense consists in filing a false and fraudulent income tax return, knowingly, willfully and with the intent or purpose to evade or defeat the tax. Once that is shown, as in the opinion of the trial court it was shown in this case, the offense has been proved. *Guzik* v. *United States*, 54 F. 2d 618, 619; *Myres* v. *United States*, 174 F. 2d 329, 334; *Cave* v. *United States, supra; United States* v. *Croessant*, 178 F. 2d 96; Mertens, *op. cit.*, Vol. 10, § 5536, p. 73.

The judgment appealed from will be affirmed.